IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2014

**STATE OF TENNESSEE v. CLINTON TRAVIS SIMPSON**

**Appeal from the Criminal Court for Hamilton County**
**No. 271705      Don W. Poole, Judge**

**No. E2013-01678-CCA-R3-CD - Filed March 6, 2014**

The defendant, Clinton Travis Simpson, appeals the revocation of the three-year probationary sentence imposed for his Hamilton County Criminal Court conviction of aggravated burglary. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Hannah C. Stokes, Chattanooga, Tennessee, for the appellant, Clinton Travis Simpson.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 19, 2009, the defendant, originally charged with aggravated burglary and misdemeanor theft, pleaded guilty to aggravated burglary in exchange for a three-year probationary sentence and dismissal of the theft charge. The defendant also agreed to perform 30 days of community service and to pay $135 in restitution to the victim.

On January 11, 2010, the defendant's probation supervisor filed a probation violation report alleging that the defendant had violated the terms of his probation by incurring new criminal charges and by impermissibly leaving the state. A probation violation warrant containing the same allegations issued two days later. On October 4, 2010, the defendant's probation officer filed an addendum to the prior probation violation report, alleging that the defendant had violated additional probationary terms by failing to report,

failing to pay restitution, and failing to complete any of his community service. The trial court revoked the defendant's probation, reinstating his supervised probation and ordering him to complete his community service and to pay restitution within 90 days.

The defendant's probation supervisor filed another probation violation report on September 25, 2012, alleging that the defendant had incurred new criminal charges of aggravated robbery, aggravated assault, and public intoxication. In addition, the report alleged that the defendant failed to notify his probation supervisor of his arrests, that he used a "small gray pistol" in the commission of his alleged crimes, that he failed to complete his community service, and that he had "allegedly exhibited assaultive, threatening and intimidating behavior against his victims." The trial court issued a probation violation warrant the next day.

At the July 8, 2013 revocation hearing, the defendant's probation supervisor, Nina Kyle, testified that she first met with the defendant in May 2012. Ms. Kyle stated that, when the defendant was first placed on probation in November 2009, he had a different probation supervisor and that he had violated his probation while under that officer's supervision. Ms. Kyle explained that she filed the September 2012 probation violation as a result of the defendant's obtaining charges of aggravated robbery, aggravated assault, and public intoxication. Ms. Kyle also testified that the defendant still owed $105 in restitution to the victim in the aggravated burglary case and that he had not yet completed any of his community service days.

On cross-examination, Ms. Kyle acknowledged that she only supervised the defendant for four or five months and that, during that time, he made an effort to make payments on the restitution he owed. She also acknowledged that the defendant had discussed with her his interest in asking the trial court to reduce the number of days of community service required. Ms. Kyle admitted that, aside from the new criminal charges, the defendant was making an effort to comply with the terms of his probation.

Steven Nation testified that he had met the defendant in 2012 while the two of them were customers at Tire World Center. Mr. Nation and the defendant struck up a conversation about cars, and, during the course of that conversation, Mr. Nation, who suffers from lupus, took a prescribed oxycodone tablet. The defendant mentioned that he could sell oxycodone to Mr. Nation, and Mr. Nation exchanged contact information with the defendant. Mr. Nation testified that, on approximately September 17, 2012, he was unsuccessful in an attempt to extract one of his own teeth, and because he managed to extract only half of the tooth, he took "about 30" oxycodone pills "to get the pain gone." As a result, Mr. Nation was admitted to the hospital and had his stomach pumped. On September 19, 2012, the defendant contacted Mr. Nation and informed him that he had some 30-milligram oxycodone

tablets for sale, and Mr. Nation agreed to meet the defendant at a car wash that afternoon in order to replenish his supply of oxycodone.

Mr. Nation and his then-girlfriend, Jamie Pierce, met the defendant at the car wash, and the defendant got into the backseat of Mr. Nation's vehicle. Mr. Nation drove approximately one block, and the defendant asked him to pull over. At that time, the defendant "put a gun to the back" of Mr. Nation's head and demanded money. Mr. Nation admitted that he did not see the gun because the defendant was seated behind him. Mr. Nation had intended to purchase $800 worth of oxycodone, and he had approximately $870, along with "some Xanaxes," "Phenergan," and "my ten Oxycodones," located in the vehicle's console. Although Mr. Nation's testimony varied as to whether the defendant took the money before or after he placed the gun to Mr. Nation's head, Mr. Nation was clear that the defendant struck him in the mouth with the handgun and knocked out several of Mr. Nation's teeth. Mr. Nation stated that the defendant then fled in the direction of the car wash, and Mr. Nation immediately contacted the police.

When law enforcement officers arrived at the scene, Mr. Nation told them that the assault occurred "over a Mustang" because he was afraid to admit that it had involved a drug deal. Law enforcement officers showed Mr. Nation a photographic lineup later that evening, and Mr. Nation identified the defendant as the man who assaulted and robbed him. Mr. Nation testified that he underwent oral surgery the following day, at which time the surgeon had to extract Mr. Nation's remaining teeth.

On cross-examination, Mr. Nation admitted that his testimony on direct examination differed greatly from what he told law enforcement officers in September 2012. Mr. Nation denied that he had pointed a gun at the defendant in an attempt to steal the oxycodone pills and that his teeth had been knocked out as a result of the defendant's struggling to avoid being shot. Mr. Nation admitted that he was, at the time of the hearing, wearing a Fentanyl patch and that he had taken xanax and oxycodone that day. Mr. Nation stated that he was 48 years of age and that he had been undergoing pain management for 10 to 12 years for a variety of ailments. Mr. Nation stated that the defendant struck him with a black or dark brown pistol, and he denied that the gun was, in fact, his own pellet gun. Mr. Nation admitted that he had lied to police about the defendant's stealing his medication, and he admitted that he did not seek immediate medical attention following the assault.

Jamie Pierce testified that she and Mr. Nation were married in April 2013 and that they were dating at the time of the September 2012 incident. Ms. Pierce testified that she first encountered the defendant at the tire store in 2012 but that she did not speak with him on that occasion. Ms. Pierce stated that, on the day of the robbery, Mr. Nation picked her up in his vehicle, and they drove to the car wash where they picked up the defendant.

Ms. Pierce's testimony, like that of Mr. Nation's, is unclear as to when the defendant stole Mr. Nation's money, but she stated that the defendant stole Mr. Nation's bottle of medication and hit Mr. Nation "with the butt of the gun," causing "teeth to go everywhere, and blood." Ms. Pierce stated that the defendant's gun was a semiautomatic Scranton .22, and she testified that she was familiar with guns because her grandfather had been a gunsmith. Ms. Pierce admitted that she had sent a text message to the defendant informing him that they did not intend to involve the police, but she denied sending a threatening text message.

On cross-examination, Ms. Pierce stated that she had been romantically involved with Mr. Nation for eight or nine years, and she admitted that he had taken pain medication for "maybe three or four years." She denied that Mr. Nation had ever overdosed on pain medication, and she denied that Mr. Nation had visited the emergency room two days prior to the robbery and assault to have his stomach pumped. Ms. Pierce admitted that the defendant never pointed the gun at her or threatened her. Ms. Pierce denied that Mr. Nation had pointed a gun at the defendant.

At the conclusion of the hearing, the trial court made the following findings:

I've listened to the testimony of Nina Kyle, she has testified that, I think she testified that he pled guilty to the public intoxication, which would, in fact, be a violation of probation. Not enough to revoke him for a three-year period of time.

Had not completely paid the restitution, had made good efforts. Once again, not enough, completely, to violate his probation from a three-year period of time.

Had not done any of the public work that he was ordered to do some three years ago, which certainly would be a violation of his probation.

We then heard from Steven Nation and from his wife, Ms. Jamie Nichole Pierce. Certainly Mr. Nation does appear should not be driving a vehicle, but I think they presented credible proof, at least that on this date in question that he did assault Mr. Nation, the defendant did assault Mr. Nation, but I think there's credible proof by a preponderance of the evidence that he had a gun and that he struck Mr. Nation. I don't find that there's credible proof that a robbery took place, I don't know exactly what took place.

-4-

So what you have, by the preponderance of the evidence, is a public intoxication case, failure to completely pay restitution, failure not [sic] to do any public work, and by a preponderance of the evidence, at least an assault on Mr. Nation.

[The defendant] is simply not, this is not something that a probationer should be doing, specifically the assault. So I would not revoke him for three years based upon restitution, he's making efforts; would not, in regard to the public intoxication. He's had now over three or four years to do the public work, hasn't done any of that.

But the preponderance of the evidence does indicate that he violated the probation by committing the assault of Mr. Nation, so based upon that, I'm going to revoke his sentence and order that he serve it. . . .

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence. . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310.

In the present case, the trial court determined that the State established by a preponderance of the evidence that the defendant had pleaded guilty to public intoxication, that he had failed to completely pay restitution, and that he had completely failed to perform

any community service.  The defendant takes exception to the testimony of Mr. Nation and Ms. Pierce, contending that the trial court did not believe either witness and that, thus, the trial court abused its discretion by revoking the defendant's probation.  The defendant is incorrect in this assessment.  Although the trial court did not find "credible proof that a robbery took place," the court did find "credible proof by a preponderance of the evidence that [the defendant] had a gun and that he struck Mr. Nation."  The record supports these determinations, justifying the revocation of probation.

We hold that the trial court acted within its discretion, and we affirm the order of revocation and the imposition of the original sentence.

_____
JAMES CURWOOD WITT, JR., JUDGE