**Sherrie STAMPS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, Nashville.

Nov. 13, 1980.

Permission to Appeal Denied by Supreme Court March 16, 1981.

Monte D. Curry, Nashville, for appellant.

William M. Leech, Jr., State Atty. Gen., James A. DeLanis, Asst. State Atty. Gen., David L. Raybin, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The defendant appeals from a judgment revoking probation and ordering her to serve a five (5) year sentence for robbery. The sentence was imposed upon the defendant's guilty plea to robbery entered on August 6, 1976.

The defendant says the evidence is not sufficient to revoke probation, says she was not given written notice of the charge against her and was denied an opportunity to hear the evidence against her and cross-examine the witnesses thereon.

The judgment is affirmed.

On March 13, 1979, the defendant was arrested on a charge of stealing a purse and was subsequently indicted thereon. On July 30, 1979, a warrant charging the defendant with violation of her probation was issued. This was based upon the larceny charge.

The trial court conducted several hearings on the warrant, the first being on September 6, 1979, and the last being on February 29, 1980.

At the hearing on September 6, 1979, two witnesses testified for the State concerning the larceny charge.

The owner of the purse testified the defendant and another woman came to her apartment in an attempt to sell a ring to her. At the time they were present, the purse was in the kitchen. The owner testified the defendant went into the kitchen, came out and acted as if she were in a hurry to leave. After the defendant left, the witness said she discovered her purse was gone. The other witness supported the testimony of the owner of the purse in most detail, however, she had no knowledge about whether the purse was in the place the owner said, and could shed no light on whether it disappeared.

The purse was never found. There was evidence the woman who had come to the apartment with the defendant was in the kitchen at one time also.

The defendant testified she was at the apartment but denied taking the purse.

An officer of the Nashville Metropolitan Police Department, who was one of the arresting officers on the original robbery case, testified he was living with the defendant and intended to marry her when he obtained a divorce from his wife.

At the conclusion of the hearing on September 6, 1979, the trial judge reset the case for further proceedings on September 11, 1979. At this hearing, the trial judge orally ordered the defendant not to live with the married man. The trial judge then stated he would continue the matter to determine if the defendant would do so.

On December 7, 1979, in a further hearing, the evidence shows the defendant had moved from the place where she and the officer had lived together. However, the evidence shows she continued to see the officer and spent at least one night a week with him. The defendant described this as spending the night with him, not living with him. The trial judge asked the defendant why she continued her conduct

with this man. She replied, "Sir, I love him, and I'd spend the night with him if he was married or had fifty kids."

After the hearing, this case was called on the trial docket several times and passed. On December 14, 1979, the trial judge continued the matter in order to see if the defendant was conducting herself properly. On February 22, 1980, the trial judge continued this case for one week and stated he was going to revoke probation if he found out what he thought he would find from one more investigation.

On February 29, 1980, the trial judge, without any further evidence being heard, revoked the defendant's probation and ordered her to serve the term for the robbery. In a written order, the trial judge found the defendant had taken the purse as alleged in the indictment and had violated the order of the court as to her living conditions.

■ The evidence in this case was sufficient for the trial judge to find the defendant had committed larceny in taking the purse and to show the defendant had continued to live with the named officer subsequent to an order of the court to terminate this conduct.

■ In determining whether to revoke probation, the trial judge need not find a violation of the terms of the probation has occurred beyond a reasonable doubt. The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily. *Barker v. State*, 483 S.W.2d 586 (Tenn.Cr. App.1972). In reviewing the findings of the trial judge, the judgment of the trial court is given the weight of a jury verdict. *Carver v. State*, 570 S.W.2d 872 (Tenn.Cr.App. 1978).

The record indicates a conscientious judgment of the trial judge. Indeed, the long process of hearings indicated the trial judge was slow to revoke the probation in order to give the defendant an opportunity to mend her ways.

■ The decision by the State to retire the larceny charge does not indicate a lack of sufficient evidence to revoke probation because the level of proof to revoke probation is not as stringent as the level of proof upon which to convict the defendant for the offense upon which the revocation warrant rests. *Raper v. State*, 3 Tenn.Cr.App. 406, 462 S.W.2d 261 (1970).

■ The defendant claims she was denied constitutional due process because she was not given written notice of the charge of living with a married man as one of the bases upon which her probation might be revoked. She relies upon *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), in support of this contention. These cases do require written notice be given to one against whom the State proceeds in a revocation hearing.

In this case, the defendant did receive written notice of the basis upon which the State was seeking to have the trial court revoke her probation. The added basis for revocation, i. e. living with the married officer, came to light from the evidence offered by the defendant. The trial court then advised the defendant to cease this course of conduct of conduct and continued the matter for several months to give the defendant the opportunity to do so. The cases upon which the defendant rely, recognizes the due process requirements are flexible and as said in *Morrissey, supra*, "... and calls for such procedural protections as the particular situation demands."

It seems only logical to find the defendant has not been denied procedural due process in the absence of written notice of the consideration by the court of the living arrangements of the defendant evidenced in this record. The defendant's evidence brought this circumstance to light. The trial judge advised the defendant this was contrary to the requirements of her probation conditions and ordered her to cease this pursuit. The hearing on the matter was continued from time to time to test her willingness to do so.

We are of the view it would be illogical to require a trial court to terminate a hearing

on probation in order for written notice to be given to a probationer whose evidence shows a violation of the terms of probation, especially where, as here, the trial judge advises the probationer of the intent of the court to consider such matter at further hearings. Such action satisfies procedural due process requirements.

The defendant's claim the trial judge conducted a separate investigation and relied upon evidence he learned outside of the hearing is significant.

■ Clearly, a probationer may not be subjected to revocation upon evidence which they have had no opportunity to hear, test by cross-examination or refute by contrary evidence.

■ It appears the trial judge did have some information gained by an independent investigation which he made. If this were the only evidence in the record, we would have no hesitancy in reversing this case for further proceedings. However, the evidence presented in the context of proper procedural due process in this case clearly shows a legitimate basis for the action of the trial judge.

We hold the action by the trial judge in his independent investigation is erroneous, but harmless beyond a reasonable doubt.

WALKER, P. J., and O'BRIEN, J., concur.