IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 27, 2010 at Knoxville

## STATE OF TENNESSEE v. JAMES EDWARD FARRAR, JR.

**Appeal from the Circuit Court for Bedford County**
**No. 16183      Lee Russell, Judge**

_____

**No. M2009-01285-CCA-R3-PC - Filed September 14, 2010**

_____

The defendant, James Edward Farrar, Jr., appeals the revocation of his probation, alleging that the State presented insufficient evidence to establish that he violated the terms of his probationary sentence. We reverse the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

John H. Norton, III, Shelbyville, Tennessee, for the appellant, James Edward Farrar, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Chuck Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April 2007, a Bedford County Circuit Court jury convicted the defendant, James Edward Farrar, Jr., of bribing a witness, and the trial court imposed a sentence of six years' incarceration. This court affirmed the judgment of the trial court on direct appeal. *See State v. James Edward Farrar, Jr.*, M2007-02006-CCA-R3-CD (Tenn. Crim. App., Nashville, Oct. 15, 2008). On May 12, 2009, a probation violation warrant issued alleging that the defendant had violated the terms of his probation by using alcohol to excess and committing the offense of public intoxication.[1]

_____

[1]At the probation revocation hearing, the defendant's probation officer, Joyce Reed, testified that
(continued...)

At the May 21, 2009 probation revocation hearing, the defendant's probation supervisor, Joyce Reed, testified that she had supervised the defendant's probation for the previous 13 months and that, until April 29, 2009, the defendant had followed all the rules of his suspended sentence. On April 29, 2009, the defendant was arrested and charged with public intoxication. Following a discussion with her supervisor and the court, Ms. Reed filed a probation violation report alleging that the defendant had violated the terms of his sentence by committing the offense of public intoxication and by consuming alcohol in excess.

During cross-examination, Ms. Reed acknowledged that the defendant reported the new arrest to her as soon as she arrived at work on April 30, 2009. She said the defendant, who had spent the night in jail, appeared "[d]isheveled" but did not appear to be intoxicated. She said he did not smell like alcohol.

Shelbyville Police Officer Tory Moore testified that on April 29, 2009, he was driving by the Hopps Express in Shelbyville with the windows down in his patrol car when he "heard some yelling, hollering." He said that he looked over and saw what "appeared to be a domestic situation" with the defendant and a woman arguing between two parked cars. Officer Moore testified that he and another officer pulled into the parking lot to investigate and that when he approached the defendant, he "smell[ed] an odor of an intoxicant, alcoholic beverage, something to that effect on his person." He stated that the defendant was "swaying back and forth," had "slightly slurred" speech, and "glassy, bloodshot eyes." After the defendant admitting having "several" alcoholic beverages, Officer Moore concluded that he was intoxicated and placed him under arrest for public intoxication.

During cross-examination, Officer Moore admitted that he created the narrative to the original arrest report on the day before the probation revocation hearing at the behest of the assistant district attorney general. Officer Moore conceded that he had seen no

---

[1](...continued)

the defendant was placed on probation after "he was determina[te] released from the Wayne County Boot Camp." Although the defendant, who was serving a six-year sentence, was not eligible for determinate release, *see* T.C.A. § 40-35-501(a)(3) (2006) ("Notwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date."), he was apparently placed on probation following his completion of one of the Tennessee Department of Corrections' special alternatives to incarceration, *see id.* § 40-20-206 ("Notwithstanding any other provision of the law to the contrary, upon successful completion of a special alternative incarceration program, an offender shall be released to the supervision of the division of community services for the department of correction under the terms and conditions imposed by the department for the balance of the original sentence imposed by the trial court. Should an offender fail to comply with the terms and conditions of supervision imposed by the department after successful completion of the program, the release on supervision may be revoked by the trial judge pursuant to § 40-35-311.").

interaction between the defendant and the woman, Patty Moore, but insisted that "the noise that [he] heard would fall under the category of somebody in distress." He could not recall any specifics of the alleged argument. He also conceded that no one appeared to be in danger and that the defendant did not appear to be a danger to himself or others. Officer Moore acknowledged that after talking to others at the scene, including the owner of Hopps Express, he concluded that the defendant had not been involved in an altercation. Even after making this conclusion, he placed the defendant under arrest for public intoxication.

Shelbyville Police Officer Jose Garza testified that as he drove by the Hopps Express, he, too, heard "a disturbance" and that the defendant "and a female were yelling at each other." Like Officer Moore, Officer Garza could not recall any of the words that the pair were yelling. Officer Garza stated that he did not smell alcohol on the defendant, with whom he interacted only briefly, but that he did notice that the defendant's being "unsteady" and having "glassy eyes." After this brief observation, Officer Garza had no further contact with the defendant.

During cross-examination, Officer Garza admitted that the original incident report he filed made no mention of the defendant and that he prepared a supplement to that report within 48 hours of the hearing. He claimed he could not remember what had prompted him to create the supplement. Officer Garza admitted that the defendant was not so unsteady that he required assistance to stand.

Following Officer Garza's testimony, the video recordings of the incident as taken from the dashboard cameras of Officer Moore's and Officer Garza's cruisers were played for the judge.[2] The videotape from Officer Moore's camera shows the defendant standing next to a silver or white sedan while Officer Moore questions him. Officer Moore told the defendant that he and Officer Garza had been dispatched to the convenience store to investigate a disturbance. He then asked the defendant how much he had had to drink, and the defendant replied, "Two beers." Throughout the exchange, the defendant is polite and cooperative. Despite that Officer Moore manually disabled his microphone for lengthy portions of the videotape, the recording establishes that the defendant's speech is not slurred. It also establishes that his gait is not unsteady. Indeed, the defendant stands virtually still throughout the entire encounter until he is placed under arrest. During the time that Officer Moore confirms with the owner of the store that there has been no disturbance, the defendant casually leans against the sedan on a few occasions. Just prior to placing the defendant under arrest, Officer Moore informs the defendant that he does not believe him to be drunk, only "borderline," but he tells the defendant that the defendant has to leave the store "somehow."

_____

[2]The videotapes received by this court were broken and unplayable. In order to facilitate our analysis of this issue, we had the tapes transferred to new cassettes for viewing.

After his arrest, the defendant walks across the parking lot toward Officer Moore's cruiser with his hands cuffed behind his back. We detect no unsteadiness in the defendant's gait despite his having his hands behind his back. Although the defendant faces the camera briefly, the lights from the cruiser make it impossible to determine whether the defendant's eyes are glassy. The videotape from Officer Garza's cruiser establishes that Officer Garza concerned himself with arresting the defendant's companion for DUI and had no interaction with the defendant.

Bedford County Sheriff's Department correctional officer Richard Paul McConkey, who performed the booking of the defendant into the jail on April 29, 2009, testified on behalf of the defendant that the defendant did not appear to be intoxicated. Officer McConkey stated that the defendant did not smell of alcohol, did not have slurred speech, and did not have glassy or blood shot eyes. He also stated that the defendant did not appear to be unsteady on his feet. He recalled that after having a 20 to 25 minute conversation with the defendant, he began to question the defendant's being charged with public intoxication. Officer McConkey testified that he heard one officer say, "[W]e have Blue in custody, and he's going to the pen."[3]

Bedford County Sheriff's Department Sergeant Virginia Lynn Hall, who had worked as a corrections officer for eight years, testified that she spoke with the defendant following his arrest on April 29, 2009, and that "from what [she] saw and observed, [she] couldn't tell that he was intoxicated." She said that the defendant had no odor of alcohol, his speech was not slurred, his eyes were not bloodshot or glassy, and that his gait was steady. She stated that she had seen the defendant intoxicated when he was arrested on previous occasions and that he was not intoxicated on April 29, 2009. She said that she heard Officer Moore say, "[H]e wasn't drunk, but I'm charging him for a PI." She said she did not say anything to Officer Moore because "that's not [her] job."

The defendant testified that on April 29, 2009, he worked all day, went home, and drank two "baby Buds" with his dinner. He then lay down on his couch for approximately four hours before walking across the street to the Hopps Express to purchase cigarettes. He stated that Patty Moore, who had been married to the defendant's father, was outside the Hopps Express and that the two hugged and were talking when the police arrived. He denied that they were yelling or arguing. The defendant denied being intoxicated on April 29, 2009.

Amesh Bhai Patel, who owned the Hopps Express, testified that he was working behind the counter on April 29, 2009, and that the defendant, who was a regular

---

[3]The defendant's nickname is "Blue."

customer, came in to purchase cigarettes. He said he saw no indication that the defendant had been drinking and that the defendant caused no problems while at the store. Mr. Patel stated that he did not hear any disturbance outside the Hopps Express on April 29, 2009.

At the conclusion of the hearing, the court accredited the testimony of officers Moore and Garza and found that the State had established by a preponderance of the evidence "both the PI violation and also the excessive consumption of alcohol grounds." The court specifically found that "as a whole" Sergeant Hall's testimony "was not credible." The trial judge stated that "there was nothing that caused any question in [his] mind about the officers' testimony and it was unequivocal." Based on these findings, the court revoked the defendant's probation and ordered that he serve the remainder of his sentence in confinement.

In this appeal, the defendant contends that the trial court erred by revoking his probation because the State failed to establish by a preponderance of the evidence that the defendant committed the offense of public intoxication or that he consumed alcohol to excess. The defendant alternatively argues that the trial court should have imposed a less onerous punishment for the probation violation. The State submits that the trial court did not abuse its discretion by revoking the defendant's probation or by ordering that he serve the remainder of his sentence in confinement. We agree with the defendant.

We consider the defendant's claims with a few well-settled principles in mind. "The standard of review upon appeal of an order revoking probation is the abuse of discretion standard." *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." T.C.A. § 40-35-311(e) (2006); *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). The trial court, as the trier of fact in a probation revocation hearing, determines the credibility of witnesses. *See generally State v. Mitchell*, 810 S.W.2d 733 (Tenn. Crim. App. 1991); *see also Carver v. State*, 570 S.W.2d 872 (Tenn. Crim. App. 1978). Following a revocation, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310. The revoking court has the option to extend the period of probation supervision for a period not to exceed two years. *Id.* § 40-35-308(c).

Here, Officer Moore testified that, upon interviewing the defendant following a "disturbance" at the Hopps Express, he smelled an odor of alcohol emanating from the defendant's person and that the defendant was unsteady on his feet. Officer Moore also observed that the defendant's eyes were glassy and bloodshot and that his speech was slurred.

Officer Moore testified that the defendant admitted consuming "several" alcoholic beverages on April 29, 2009. Officer Garza confirmed that the defendant was unsteady on his feet and that he had glassy, bloodshot eyes. The trial court specifically accredited this testimony. The videotape from Officer Moore's cruiser, however, belies Officer Moore's testimony that the defendant's speech was slurred and that his gait was unsteady. The tape also clearly shows that the defendant told Officer Moore that he had consumed two beers and not "several," as was Officer Moore's testimony. The videotape from Officer Garza's cruiser established that Officer Garza did not interact with the defendant in any appreciable manner.

Thus, the only remaining credible evidence is Officer Moore's testimony that the defendant smelled of alcohol and had glassy eyes as he stood in the parking lot of the Hopps Express on April 29, 2009. *See State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003 (discrediting officer's testimony that Garcia was driving in an erratic manner based upon videotape of Garcia's driving). This testimony failed to establish that the defendant was "endangered," that "[t]here [was] endangerment to other persons or property," or that "[t]he [defendant] unreasonably annoy[ed] people in the vicinity." T.C.A. § 39-17-310(a). Indeed, the videotape from Officer Moore's cruiser militates against each of these factors. Accordingly, there was no substantial evidence from which the trial court could have concluded that the defendant committed the offense of public intoxication. Moreover, testimony that the defendant's eyes were glassy and that he smelled of alcohol was insufficient to establish by a preponderance of the evidence that the defendant had consumed alcohol "to excess" in violation of a specific rule of his probation. In consequence, the trial court abused its discretion by revoking the defendant's probation.

Accordingly, the judgment of the trial court is reversed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-