IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2014

## STATE OF TENNESSEE v. KEVIN POTTER

**Appeal from the Criminal Court for Campbell County**
**Nos. 13928, 14179, 14070, 14076, 14888, and 14975    E. Shayne Sexton, Judge**

**No. E2013-01493-CCA-R3-CD - Filed February 21, 2014**

The defendant, Kevin Potter, appeals the Campbell County Criminal Court's order revoking his probation and ordering him into confinement. Because the record supports the order, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE, J., joined. JEFFREY S. BIVINS, J., concurred in results.

Tina L. Sloan (on appeal) and William C. Jones (at hearing), Assistant District Public Defenders, for the appellant, Kevin Potter.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This appeal is the defendant's second appeal from the orders of the trial court revoking the defendant's probation in a number of trial court cases. The first appeal resulted in a remand to the trial court for that court to express its findings of fact supporting revocation. *See State v. Kevin C. Potter*, No. E2012-00794-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 21, 2013). The opinion in *Kevin C. Potter* efficiently outlines the background and procedure of this case:

> This case arises out of multiple guilty pleas entered by the [d]efendant. On October 26, 2009, the [d]efendant pled guilty to one count of possession of a Schedule II drug, theft of

property valued over $500.00, possession of marijuana, promotion of the manufacture of methamphetamine, evading arrest, aggravated burglary, resisting arrest, possession of a Schedule II drug with the intent to sell, and assault. The trial court sentenced the [d]efendant to fifteen years, ordering that he serve his sentence on probation.

On May 23, 2011, the [d]efendant pled guilty to possession of drug paraphernalia and vandalism under $500.00. These convictions were the basis for the [d]efendant's first probation violation warrant. It appears from the record that he pled guilty to violating the conditions of his probation sentence. The trial court ordered that the [d]efendant's probation be reinstated.

On July 21, 2011, a probation violation warrant was issued based upon a July 18, 2011, domestic violence charge, which was later dismissed. On August 15, 2011, the trial court again found the [d]efendant guilty of violating the conditions of his probation sentence. The trial court again reinstated the [d]efendant's probation. The trial court ordered, however, that the [d]efendant could not be released from custody until after he showed proof of employment to his probation officer and the Board of Probation and Parole approved a plan for the [d]efendant's payment of fines and fees.

On November 19, 2011, a violation of probation warrant was issued based upon a November 8, 2011, manufacturing methamphetamine charge, which was later dismissed. On February 27, 2012, the trial court found the [d]efendant guilty of violating his probation. The trial court ordered the [d]efendant to serve the remainder of his sentence in the custody of the Tennessee Department of Correction.

*Kevin C. Potter*, slip op. at 2 (footnote omitted).

This court then described the revocation hearing that was held in *Kevin C. Potter*:

At the hearing to determine whether the [d]efendant had

-2-

violated his probation, the only witness was the [d]efendant's probation officer, Kelly Andrews. She testified that the [d]efendant was arrested on November 8, 2011, for manufacturing methamphetamine. On November 19, 2011, Andrews filed an affidavit in support of a probation violation warrant. In her affidavit, she alleged that the [d]efendant had violated several of the terms of his probation, including a requirement that he follow the law. Andrews agreed that the manufacturing methamphetamine charge against the [d]efendant had been dismissed on December 13, 2011.

Andrews testified that her affidavit also alleged that the [d]efendant had violated his probation by failing to maintain lawful employment. Specifically, he had failed to provide her with proof of employment or proof that he was seeking employment.

Andrews said that the [d]efendant had violated his probation by failing to carry out her "lawful instructions." She expounded that she instructed the [d]efendant to report on October 4 and that he did not report at any time in October. Andrews testified the [d]efendant also failed to attend a scheduled class called "Thinking For a Change," which was held on October 5. The [d]efendant had not reported to her since September.

Andrews testified that the [d]efendant also violated his probation by failing to pay his supervision fees, which were $45.00 per month. At the time of the hearing, he owed the Board of Probation and Parole at least $225.00. He had similarly failed to pay the required court costs of $25.00 per week, for a total of $125.00.

Andrews recounted the [d]efendant's history of supervision, saying that he began parole in Illinois. After finishing the required time there, he returned to Tennessee to serve his probation. She said that his probation has been "sporadic" and that he had violated his probation multiple times. Most of the violations were based upon new charges. Andrews opined that the [d]efendant was not willing to abide by the terms

of his probation.

On cross-examination, Andrews testified that she had supervised the [d]efendant beginning in 2009 and that, at first, she saw him twice per month. She reduced the visits to once per month shortly before the [d]efendant was charged with multiple offenses, which were the basis for his first probation violation. Andrews recalled that the [d]efendant's second probation violation was based on new charges of domestic violence and vandalism. When the victim failed to appear in that case, the case was dismissed. At the hearing on this second probation violation, the trial court found that, even though the new charges were dismissed, the [d]efendant was still in technical violation of his probation because he had failed to pay his supervision fees. The trial court ordered him to provide proof of employment, and the [d]efendant provided Andrews with documentation that he had employment arranged at a marina upon his release.

*Id*. at 3.

We noted that after hearing this evidence, the trial court expressed its views:

"This is a third, correct--a third violation. The Court's concern about this was the length of the--I'm showing a 15-year probation.

. . . .

. . . . You know, . . . I don't relish the idea of imprisoning someone for that length of time without a great deal of thought, but I'm gonna find he's in technical violation. I didn't know at the time that he had been paroled out of Illinois. That has--that's very looming in the prospects for probation. This is not working, gentlemen. I'm all for giving opportunities . . . to get things right, and the fact that we had a dismissal on a charge doesn't necessarily clean up everything.

. . . .

Well, I guess what Ms. Andrews said. You know, I mean, [the dismissed charge is] certainly not a conviction, but . . . I don't know that I'd call it an acquittal. I'm gonna give him credit for the time that he's served on these charges on pretrial, any violation time, and I'm gonna call it a day on probation for any time of alternative sentencing. The defendant hasn't worked out too well. So, remand to the Tennessee Department of Corrections."

*Id.* at 4.

Upon this court's review of the revocation proceeding, we commented that the trial court "did not issue any written findings of fact," *id.* at 4, and "did not address the allegations made in the third revocation warrant, which were technical in nature," *id.* at 6. Also, "[t]he trial court also did not set forth the evidence it relied upon in revoking the [d]efendant's probation as required by the due process standards." *Id.* at 6. Therefore, we "reverse[d] the judgment of the trial court and remand[ed] for entry of a written order containing specific factual findings upon which the trial court relied when it ordered the [d]efendant's probation revoked." *Id.*

On remand, the trial court conducted a hearing on April 14, 2013. The court reviewed the transcript from the hearing held on February 27, 2012. The court found that the State had established that the defendant failed to meet with his probation officer and failed to attend his counseling class, both in October 2011. The judge commented that the defendant had failed to "keep up with payment obligations" and that he had been convicted of a misdemeanor in May 2011, but in stating the bases for revoking the probation, the court said that it relied upon the failures to report and attend class in October 2011.

On April 15, 2013, the trial court entered new orders effecting the revocation of the defendant's probation and ordering him to serve the balance of his sentence in the department of correction. The defendant filed his notice of appeal embracing all affected cases on June 25, 2013.

On appeal, the defendant posits that the trial court erred by (1) relying upon evidence not before the court, (2) sentencing the defendant based upon non-payment of court costs and supervision fees, and (3) sentencing the defendant based upon the revocation proceeding's being a third such proceeding when the second proceeding violated the defendant's due process rights. The defendant also claims that cumulative error resulted from the trial court's actions.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W .3d 553, 554 (Tenn .2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S .W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence. . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310. *Id*.; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310. The revoking court may extend the period of probation supervision for a period not to exceed two years. *Id.* § 40-35-308(c).

In his first issue, the defendant maintains that the trial court relied upon information not before the court in revoking his probation. In particular, the defendant complains that the trial court considered an Illinois conviction that had not been established by evidence in the revocation proceeding. We disagree. Although the trial court acknowledged that the defendant's probationary sentence did not commence until the defendant had completed serving a sentence in Illinois, the court expressly relied upon the defendant's lapses in October 2011 as the bases for the revocation and the order to confinement. The trial court further acknowledged that the failure to report and the failure to attend the counseling meeting in October 2011 were "technical violations," but nevertheless the trial court deemed them justification to revoke probation. Indeed, a "'technical violation' is sufficient to support a probation revocation." *State v. Isaac Thomas*, No. E2011-00565-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Dec. 5, 2011) (quoting *State v. Herbert Russell Johnson*, No. E2003-02580-CCA-R3-CD (Tenn. Crim. App. at Knoxville, May 26, 2004)), *perm. app. denied* (Tenn. Mar. 7, 2012).

Next, the defendant claims that the trial court's order of confinement was erroneously based upon the defendant's alleged non-payment of fees and costs. Again, we disagree. The trial court mentioned the allegation that fees and costs had not been paid, but it specifically limited its revocation and order of confinement on the October 2011 lapses of

conduct.

In his next issue, the defendant posits that the revocation and confinement order are infirm because a previous revocation hearing was conducted in violation of the defendant's due process rights. The revocation now before this court is the third revocation of the defendant's probation, and the defendant argues that the trial court's decision to revoke and order confinement was in part due to the number of the defendant's revocation proceedings. The defendant claims that the second revocation proceeding was conducted in derogation of his right to counsel and was based upon the filing of new criminal charges that were later dismissed. He further avers that he was not allowed to cross-examine the probation officer who testified without being sworn.

As the State points out, the defendant did not appeal the second revocation of his probation, which essentially resulted in a return to probation. The order declaring the revocation on the second violation proceeding became final 30 days after it was entered. This is not a case in which the allegedly infirm order statutorily aggravated or enhanced the later revocation. Although the defendant cited facts from the second revocation proceeding and cited law which supports his claim that infirmities in that proceeding exist, he has cited no authority for the proposition that the unadjudicated infirmities in the second proceeding should influence this court's adjudication of the case now before us – the third revocation proceeding. We do acknowledge, however, that the State failed to cite any authority for the counter proposition. Additionally, we note that, should a court invalidate the order of revocation in the second violation proceeding, the effect would be to leave that second violation proceeding pending; it would not have been dismissed. All of this notwithstanding, the defendant did not raise this issue in the trial court in the proceeding now before us. On that ground alone, we decline to address this issue. *See, e.g.*, *State v. Maddin*, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) ("When an issue is raised for the first time on appeal, it is typically waived."); *see also* Tenn. R. App. P. 36(a).

The result is that we affirm the trial court's order of revocation and incarceration.

_____
JAMES CURWOOD WITT, JR., JUDGE