IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2015

**STATE OF TENNESSEE v. ZANTUAN A. HORTON**

**Appeal from the Circuit Court for Dickson County**
**Nos. 22CC-2012-CR-95 & 22CC-2012-CR-111     Suzanne Lockert-Mash, Judge**

_____

**No. M2014-02541-CCA-R3-CD – Filed July 28, 2015**
_____

The defendant, Zantuan A. Horton, appeals the revocation of his probationary sentence, claiming that the trial court erred by ordering that he serve the balance of his sentence in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Dawn S. Kavanagh, Assistant District Public Defender, for the appellant, Zantuan A. Horton.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Carey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Originally charged, in case number 22CC-2012-CR-95 with one count each of third offense driving on a revoked license, simple possession of marijuana, and failure to appear in court and in case number 22CC-2012-CR-111 with two counts of the sale of .5 grams or more of cocaine, the defendant pleaded guilty on January 17, 2014, to one count of the sale of .5 grams or more of cocaine and one count of third offense driving on a revoked license; the State dismissed the remaining charges. The trial court ordered the defendant to serve eight years for the sale of .5 grams or more of cocaine and 11 months, 29 days for the third offense driving on a revoked license. The trial court ordered the sentences to be served concurrently and on supervised probation following the service of 30 days in jail.

On May 28, 2014, the defendant's probation officer filed a violation report alleging that the defendant had violated the terms of his probation by being arrested for domestic assault and possession of contraband in a penal institution. On June 27, 2014, the State dismissed the probation violation warrant with the concurrence of the trial court, and the defendant's probation was transferred to community corrections placement.[1]

On September 24, 2014, the defendant's probation officer filed a violation report alleging that the defendant had violated the terms of his sentence by failing to pay court costs; by failing to provide proof of full-time employment; and by failing to follow the recommendations of the community corrections program. On October 14, 2014, the defendant's probation officer filed a second violation report, alleging that the defendant had not reported as scheduled since September 15 and that he was considered to be an absconder.

At the November 26, 2014 revocation hearing, Angela Hunt, the community corrections officer supervising the defendant's probation, testified that she had been supervising the defendant since June 27. From June 27 until September 15, the defendant reported once per week as instructed, but he failed to provide any verification of employment. Pursuant to the terms of his community corrections placement, the defendant was required to pay $50 per month in court costs, and Ms. Hunt testified that he had failed to make any of those payments. Because the defendant was unemployed, he was required to attend an employment skills class. The defendant was removed from the class around September 15 because he disposed of his class workbook, exhibited a "poor attitude," and refused to take responsibility for his actions. Ms. Hunt explained that the defendant "didn't understand why he got kicked out" of the employment skills class because "he had a job and so that's why he threw the workbook away," but the defendant never provided Ms. Hunt with proof of his employment. The defendant told Ms. Hunt that he had attempted to contact her on her cellular telephone several times after September 15, but the defendant left no voicemail messages, and Ms. Hunt was unaware of his attempts to reach her.

Ms. Hunt admitted that the defendant turned himself in on September 29, two weeks after his most recent appearance with Ms. Hunt. Ms. Hunt acknowledged that the defendant had made a total of $30 in payments on his supervision fees, which covered

---

[1] Although the parties and the court refer to the action at issue in this case as the revocation of the defendant's "community corrections sentence," the record indicates that the defendant was not, in fact, resentenced to community corrections but that the supervision of his probationary sentence was transferred to the community corrections program. *See* T.C.A. § 40-36-106(f) ("Nothing in this section shall prevent a court from permitting an eligible defendant to participate in a community-based alternative to incarceration as a condition of probation in conjunction with a suspended sentence, split confinement or periodic confinement as provided in chapter 35 of this title.").

the months of July and August, but that he did not make a payment on the September fees.

The defendant testified that he quit attending the employment skills class in September because he was "getting a job at UPS" and that he was involved in job training for two weeks starting in mid-September. The defendant conceded that he had not called Ms. Hunt to inform her that he would be attending that job training. The defendant stated that he had been hired by other employers but that he had been fired after the employers learned of his criminal background, although the defendant later admitted that he had not been employed by any establishment from June until September. The defendant testified that he was attempting to enroll in barber college and that he intended to start his own barber business upon finishing school.

Although his explanation was convoluted, the defendant appeared to explain that he missed his required reporting date on September 22 because he was working in an attempt to earn money to pay his anticipated bond, even though his probation officer had not yet filed a probation violation report. The defendant also offered, as a second explanation for his absence on September 22, that Ms. Hunt had visited his house on September 19 and had informed the defendant's mother that she had a warrant for his arrest. The defendant admitted that he had been on probation on a previous occasion, that he was familiar with the rules he was required to follow while on probation, and that he had chosen to violate those rules.

Ms. Hunt testified as a rebuttal witness that, on September 2, the defendant had informed her that he was planning to contact Marvin Turner to learn if the defendant had been hired by UPS. On September 15, Ms. Hunt gave the defendant a verbal warning regarding two missed employment skills classes and informed the defendant that it was "his final chance" to secure employment. Ms. Hunt denied ever visiting the defendant's residence.

The trial court found that the defendant was "in willful violation" of the terms of his probationary sentence. Although the trial court was unconcerned with the defendant's failure to pay court costs, the court specifically noted that it "doubt[ed]" the defendant's credibility on the issue of his failure to report because the defendant believed Ms. Hunt had already filed a probation violation report. The court emphasized the paramount importance of reporting to one's probation officer and found that the defendant violated the rule of reporting as instructed. In addition, the trial court found that the defendant violated the terms of his placement by failing to attend and participate in the employment skills class as required. The trial court ordered the defendant's sentence into execution, with credit for the time the defendant spent in confinement.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence. . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310.

In the present case, the defendant admitted violating the terms of his probation. Thus, the defendant conceded an adequate basis for a finding that he had violated the terms of his alternative sentence. *See State v. Neal Levone Armour*, No. E2003-02907-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, Sept. 9, 2004) (citations omitted). Moreover, the trial court determined that the State sufficiently established the violations. The record supports these determinations, and, therefore, revocation was unquestionably justified.

We hold that the trial court acted within its discretion, and we affirm the order of revocation and the imposition of the original sentence.

_____
JAMES CURWOOD WITT, JR., JUDGE

- 4 -