IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs May 19, 2021

**STATE OF TENNESSEE v. RANDY MASSEY**

**Appeal from the Circuit Court for Giles County**
**No. 16537    Stella L. Hargrove, Judge**

**No. M2020-00893-CCA-R3-CD**

The defendant, Randy Massey, appeals the Giles County Circuit Court's order revoking his probation and ordering him to serve the balance of his six-year sentence for aggravated assault in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Brandon E. White, Columbia, Tennessee (on appeal), and Hershell Koger, Assistant District Public Defender (at hearing), for the appellant, Randy Massey.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Rebecca S. Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 28, 2014, the defendant pleaded guilty to one count of aggravated assault in exchange for a six-year sentence with all but 90 days to be served on supervised probation, with the special condition that he complete 26 weeks of an anger management program. His probation was set to expire on April 28, 2020. A probation violation warrant issued on June 19, 2017, which revocation was dismissed prior to a hearing. A second probation violation warrant issued on May 1, 2018, alleging multiple violations of the terms of his supervision, including garnering a new arrest for driving under the influence ("DUI") and other driving violations. The trial court ordered the defendant to serve 150 days before being returned to probation.

On September 19, 2019, a third probation violation warrant issued, alleging that the defendant had absconded and had failed to complete anger management classes. It appears from the record that the defendant was arrested on that violation warrant on April 2, 2020.[1]

At the May 28, 2020 revocation hearing, Probation Officer Misty Kelley testified that she sought a violation warrant for the defendant because she was unable to contact the defendant after multiple attempts at a home visit and telephone calls. She stated that the defendant had also failed to provide proof of having completed the required anger management classes. Ms. Kelley said that the defendant did not do well on supervision following his partial revocation in June 2018. She explained that, although the defendant was not scheduled for a home visit, she needed to update certain information. She said that she called him multiple times but "couldn't get a hold of him." On July 25, 2019, she "did a home visit at his last reported address," but no one answered the door. She left a door hanger reporting her visit and instructing the defendant to contact her, but she never received a call. She attempted to call the defendant again on July 30, 2019, and attempted a second home visit on August 1 and saw that the door hanger that she had previously left was still there. She returned to the address on August 8 and noticed that the door hanger had been removed, but, again, no one answered the door. Ms. Kelley stated that she "requested the CLEAR report" and visited an address from that report but received "[n]o answer at that door." She said that the defendant failed to report for his regularly-scheduled check-in on August 28, 2019.

Ms. Kelley stated that, in May 2020, she learned that the defendant had been charged with and convicted of second offense DUI, failure to appear, and driving on a revoked license. She filed for an amended violation warrant but did not know the outcome of that warrant.[2] A certified copy of the defendant's judgment from general sessions court showed that the defendant was convicted of second offense DUI on April 16, 2020.

During cross-examination, Ms. Kelley testified that the defendant's term of probation was set to expire on April 28, 2020, but she noted that when a violation warrant is filed, the expiration date "freezes." She stated that the defendant last reported on May 15, 2019, and, because he was on minimum supervision, he was not scheduled to report again until August 28. She acknowledged that the defendant had not failed a drug screen since June 2014.

The defendant acknowledged that he had pleaded guilty to the second offense DUI charge, which event occurred while he was serving probation in this case. He stated

---

[1]     We glean this date from the jail time credits indicated on the revocation order. The defendant's testimony at the revocation hearing corroborated this date.

[2]     An amended violation warrant is not included in the record on appeal.

that he did not notify Ms. Kelley of his arrest for the DUI because he "was locked up." He acknowledged, however, that the events leading to his second offense DUI arrest occurred on April 3, 2019, and that he reported to probation in May 2019, but that he neglected to tell Ms. Kelley about the incident.

The defendant stated that Ms. Kelley was unable to contact him during the period that she attempted home visits and telephone calls because, sometime after he reported in May, he had been fired from his job and, consequently, had been evicted from his residence for his inability to pay rent. He stated that he did not report to probation that he had lost his job and had been evicted because he did not have a telephone and "didn't have no money. I was homeless." He explained that he moved around between his aunt's and uncle's houses in North Giles County during that time. He acknowledged that his uncle had a telephone and that his aunt had a telephone at her work. The defendant stated that he did not report to probation on August 28 because he did not have transportation, noting that his driver's license had been revoked as a result of the DUI conviction.

The defendant said that he had been in custody on this probation violation since April 2, 2020, and that he pleaded guilty to second offense DUI on April 14, 2020, and was ordered to serve 45 days of an 11-month-29-day sentence on that conviction. He stated that his arrest on April 2 was for both the DUI and for the probation violation. He acknowledged that he violated the terms of his probation. He said that if returned to probation, he would live with his girlfriend and that his girlfriend could drive him to the probation office as needed. He also said that he was a certified welder and would "have no problem getting a job."

During cross-examination, the defendant acknowledged that he used alcohol "to excess" when he committed the DUI, having a blood alcohol content of .216. He said that he had been in a relationship with his girlfriend for 10 years. He explained that, prior to his arrest in this case, his girlfriend did not have a telephone or vehicle but that she had since become employed and had obtained a telephone and an operable vehicle. He stated that his girlfriend had repaired her vehicle in March and acknowledged that she could have driven him to the probation office before his arrest.

The defendant clarified that his uncle did not have a telephone at the time that the defendant lived with him. He stated that he went to his aunt's house only one or two times and did so only when she was at work and, therefore, did not see his aunt during that time. He said that he rode to work with a co-worker but that that co-worker would not give him a ride anywhere except to work and that he did not know anyone else with a vehicle at that time. He acknowledged that his co-worker had a telephone that the defendant would use to text his girlfriend when he got off of work, but he stated that he could not have used his co-worker's telephone to call the probation office.

Upon questioning by the court, the defendant explained that on April 3, 2019, he was taken to the hospital for a blood test to determine his blood alcohol content but that he was not arrested at that time. Instead, the officer "said he would get back with us when our blood work come back." The State confirmed that the defendant was taken to the hospital at that time for injuries but was not arrested for DUI until sometime later. The defendant stated that he was not arrested for the second offense DUI until April 2, 2020, one year after the incident.

At the close of the hearing, the trial court found that the defendant was not a credible witness and had violated the terms of his probation. The court revoked the defendant's probation and ordered him to execute his original six-year sentence.

In this timely appeal, the defendant alleges that the trial court abused its discretion by fully revoking his probation, arguing that because his probationary term expired prior to his revocation hearing, he should not be required to serve the full six-year sentence. The State contends that the trial court did not err.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citation omitted).

Here, the defendant's probationary term was set to expire on April 28, 2020.

The State, however, filed a probation violation warrant on September 19, 2019, which filing had the effect of interrupting the probationary term. *See State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) ("If the probation revocation warrant is issued within the term of the sentence, the issuance of the warrant commences the revocation proceedings and thereby interrupts the running of the probationary period 'until such time as the trial court [may] hear and determine the issue raised by the [warrant].'" (quoting *McGuire v. State*, 292 S.W.2d 190, 193 (Tenn. 1956)) (alterations in *Shaffer*)).  Consequently, the trial court had the authority to revoke the defendant's probation after the date on which the probationary term would have expired had a warrant not been filed.  *Id.* ("This interruption in the service of the sentence of probation effectively extended the trial court's authority over the defendant beyond . . . the date the probationary period would have expired had a revocation warrant not issued, until such time as the revocation issue was resolved.").

The defendant acknowledged that he violated the terms of his probation, and this acknowledgment supports the trial court's revocation of probation in this case.  Upon finding that the defendant violated the terms of his probation, the trial court acted within its discretion by ordering the defendant to execute his original sentence.  *See* T.C.A. § 40-35-310(a); *Reams*, 265 S.W.3d at 430.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE