IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Jackson September 4, 2024

## STATE OF TENNESSEE v. NORMA JEAN HARDIN

**Appeal from the Circuit Court for Lincoln County**
**No. 17-CR-138      Forest A. Durard, Jr., Judge**

_____

## No. M2023-01551-CCA-R3-CD

_____

The defendant, Norma Jean Hardin, appeals the order of the trial court revoking her probation and ordering that she serve her full sentence in confinement. Upon our review of the record and the parties' briefs, we affirm the revocation and disposition of the defendant's probation.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and KYLE A. HIXSON, JJ., joined.

Jefre S. Goldtrap, Assistant Public Defender, Fayetteville, Tennessee, for the appellant, Norma Jean Hardin.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

On December 19, 2017, the defendant pled guilty in case number 17-CR-138 to the sale of hydrocodone, a schedule II drug. The trial court imposed a three-year sentence, suspended to supervised probation, to be served consecutively to a four-year probationary sentence in case number 17-CR-139 involving the sale of oxycodone. In December 2021, the trial court issued a probation violation arrest warrant based on the defendant's violating

the terms of her probation by engaging in disorderly conduct and testing positive for illegal drugs. The defendant admitted the violations, served 180 days, and returned to probation.

In January 2023, the trial court issued a second probation violation arrest warrant based on the defendant's failing to inform her probation officer of a change of address and failing to report after being released from jail. The defendant admitted the violations, and the trial court ordered her to serve 120 days, wear a GPS ankle monitor for six months after release, and report once a month.

On August 3, 2023, the trial court issued a third violation of probation arrest warrant, alleging that the defendant tested positive for "[m]ethamphetamines and [a]mphetamines" on July 11, 2023, and that her GPS ankle monitor was no longer traceable on July 14, 2023. The trial court conducted a revocation hearing on October 3, 2023, at which the defendant and Kelly Auger, a probation officer with the Tennessee Department of Correction, testified concerning the defendant's third probation violation.

Officer Auger testified that the defendant received a copy of the rules of probation at the start of her probation. Officer Auger said that on July 11, 2023, the defendant completed a mandatory drug test and "failed for methamphetamine and amphetamines." In addition, the defendant's ankle monitor stopped responding around July 14, 2023, which meant the battery had died. Officer Auger pointed out that the monitor was supposed to be "charged on a daily basis so it will pinpoint where she is at any time." However, because the battery had died, Officer Auger was "unable to locate [the defendant]." Officer Auger went to the defendant's reported address, but the defendant's niece, who lived there, said the defendant had moved out the week before. The defendant's niece reported that the defendant's belongings were locked in the defendant's son's car parked next to the residence, but Officer Auger could not access the inside of the car and could not see the GPS equipment through the windows. Officer Auger also made "several attempts" to contact the defendant on a cell phone loaned to the defendant by a friend, but the defendant was no longer in possession of the phone.

The defendant testified in July 2023, she was staying with her niece and her niece's husband. The defendant claimed that her niece's husband wanted her to leave the residence because the defendant caught him using illegal drugs and the defendant told her niece that information. The defendant's niece told the defendant that she could stay at the residence, but her niece's husband threatened to "get [the defendant] out of here one way or the other." According to the defendant, sometime around July 4, she had a 20-ounce bottle of Coca-Cola in the refrigerator, and when she drank it, she "noticed that it was kind of bitter, but . . . drank it" anyways. The next morning, the defendant's niece's husband told her "that he had put some drugs in [her] drink." The defendant maintained that the drugs were forced on her and asserted that she "do[esn't] take illegal drugs." However, on cross-examination,

the defendant admitted that she had previously taken Adderall while on probation and that led to her testing positive for methamphetamine. The defendant also admitted that she did not go to the hospital or notify law enforcement or Officer Auger that she had involuntarily ingested methamphetamine.

The defendant testified that following this incident with the Coca-Cola, the defendant's niece's husband forced the defendant out of the residence, leaving her homeless and without a place to charge her GPS ankle monitor. Without a place to stay, the defendant began sleeping in a bathroom at Stonebridge Park. She awoke following a storm to find herself in an "old abandoned house" in the custody of a Hispanic man named "Alvarez." Her head was hurting and her eye was swollen, and Alvarez admitted to hitting her on the head with a piece of steel. The defendant was held captive for several days. At one point, Alvarez removed the defendant's ankle monitor out of fear that it contained a microphone. The defendant insisted that she did not remove the device. On cross-examination, the defendant admitted that she did not file a police report concerning the alleged kidnapping or inform Officer Auger that Alvarez removed her ankle monitor. The defendant claimed that Alvarez returned her to the park with her cell phone but had reset it to the factory settings. Moreover, at some point, "[t]he lady" who let the defendant borrow the cell phone, "took it back."

In argument to the court, the defense asserted that the defendant did not voluntarily violate the rules of probation because she was "given drugs in some sort of surreptitious way" and "that there w[ere] some issues with prior [GPS] machines, and for a period of time she was homeless without the ability to charge it up."

Following the hearing, the trial court found that the State had proven by a preponderance of the evidence that the defendant violated the terms of her probation. The court emphasized the positive drug screen on July 11, 2023, and discussed the high levels of the drugs found in the defendant's system. The court recounted the defendant's explanation of ingesting a Coca-Cola "laced" with methamphetamine but said, "I'm just not buying that story." The court found it "implausible that [the defendant] consumed this [drink] 6 days before or 7 days before or somewhere around there, and she would still remain that high." The court concluded that "the evidence here preponderates against [the defendant's] claim that she had accidentally ingested some laced Coca-Cola product, I just don't find that to be credible." The court also found the defendant's story of being abducted by a man named Alvarez who removed her GPS tracker to be "pretty farfetched" and "basically incredible." The court deemed the defendant's failure to contact Officer Auger about either of the alleged incidents to be a "red flag."

Before turning to the appropriate consequence for the probation violations, the court asked whether either party wanted to be heard on the issue. The State asserted that the

- 3 -

defendant's sentence should "be put into effect based on the facts . . . and the procedural posture of how many violations and amount of time she served." The defense asked "for continued probation and noted "that we are on one side and they are on the other side. There is no reason to belabor the point."

In making its determination, the court acknowledged that the defendant originally went four years without violating her probation, which "on paper . . . looks pretty good." The court continued, however, that "in the course of a year's time we have been here 3 different times." The court concluded that "at some point enough is enough, and I don't think she is any longer a suitable candidate for probation." Accordingly, the trial court fully revoked the defendant's probation[1] and ordered that she "serve the balance of her sentence as previously imposed." The defendant appealed.

### *Analysis*

On appeal, the defendant argues that the trial court erred by finding she had violated the terms and conditions of her probation, by determining that the appropriate consequence for the violation was full revocation, and by failing to consider whether the defendant should receive "street time" credit for time accumulated while on probation prior to the violation. The State responds that the trial court did not abuse its discretion in finding that the defendant violated her probation and ordering a full revocation. However, the State asserts that the defendant waived the "street time" credit issue by raising it for the first time on appeal. We agree that the trial court did not abuse its discretion in finding the defendant violated her probation and ordering a full revocation. Additionally, we agree with the State's assertion that the defendant waived his claim concerning "street time" as he did not raise the issue during the revocation hearing.

## I. Determination of Revocation and Disposition

The defendant first argues that the trial court erred by finding that she had violated the terms and conditions of her probation and determining that the appropriate consequence for the violation was full revocation.

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "[A] probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of

---

[1] The revocation only applied to case number 17-CR-138 because the defendant's sentence in case number 17-CR-139 had expired.

the evidence that a defendant violated the conditions of his or her probation must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753.

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. §§ 40-35-310, -311; *see State v. Turner*, 2013 WL 5436718, at *2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in full. Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995).

To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554-55 (Tenn. 2001). In revocation cases, the trial court abuses its discretion when the record contains "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* at 554 (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (quoting *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980 )).

In this case, the record supports the trial court's finding that the defendant violated her probation by testing positive for illegal substances and failing to charge her GPS ankle monitor. At the revocation hearing, Officer Auger testified that the defendant completed a mandatory drug test on July 11, 2023, and "failed for methamphetamine and amphetamines." Officer Auger also testified that the defendant's ankle monitor stopped responding around July 14, 2023, which meant the battery had died. The defendant provided explanations for her failed drug test and lapse of her ankle monitor, but the trial court discredited the defendant's testimony finding her explanations to be "implausible" and "incredible." "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)). Therefore, based on the testimony presented and the trial court's credibility findings, the trial court did not abuse its discretion in revoking the defendant's probation, and the defendant is, therefore, not entitled to relief.

Having concluded that the trial court's determination to revoke the defendant's probation was not an abuse of discretion, this Court must separately review the trial court's determination of the consequence imposed on the defendant. When a defendant's probation is revoked, the trial court has "discretionary authority to: '(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years.'" *State v. Fleming*, 2018 WL 6787580, at \*2 (Tenn. Crim. App. Dec. 26, 2018) (quoting *State v. Brawner*, 2014 WL 465743, at \*2 (Tenn. Crim. App. Feb. 4, 2014)) (citations omitted). "The determination of the proper consequences of the probation violation embodies a separate exercise of discretion." *Id.* (citing *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).

While it is "not necessary for the trial court's findings to be particularly lengthy or detailed[,]" sufficient reasoning must exist to promote meaningful appellate review. *Dagnan*, 641 S.W.3d at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)). Moreover, this Court has repeatedly held that "an accused, already on [suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Walden*, 2022 WL 17730431 \*4 (Tenn Crim. App. Dec. 16, 2022) (quoting *State v. Brumfield*, 2016 WL 4151178, at \*8 (Tenn. Crim. App. Aug. 10, 2016)) (citations omitted).

The record likewise supports the trial court's determination that the appropriate consequence for the probation violations was full revocation. The court considered the defendant's two prior revocations, noting that "in the course of a year's time we have been here 3 different times." The court presumably also considered the defendant's lack of candor based on its assessment of the defendant's testimony as "implausible" and "incredible." The court concluded that "at some point enough is enough, and I don't think she is any longer a suitable candidate for probation." The trial court did not abuse its discretion in ordering full revocation, and the defendant is, therefore, not entitled to relief.

## II. Failure to Consider an Award of "Street Time"

The defendant lastly argues that the trial court erred by failing to consider whether she should receive "street time" credit for time accumulated while on probation prior to the violation. Again, the State asserts that the defendant waived the issue by failing to raise it at the revocation hearing. We agree with the State.

Pursuant to Tennessee Code Annotated section 40-35-310(a), once a trial court has determined to revoke probation and order incarceration as the consequence, it then has the discretion to "credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a

portion of that amount of time." *See State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023). The statute gives authority to the trial court to exercise its discretion to award or to deny credit for the time a defendant successfully serves on probation. *See id.* at 260 (quoting *State v. Smartt*, 2021 WL 6143735, at *9 (Tenn. Crim. App. Dec. 30, 2021)).

While the trial court has discretion to award a defendant credit for time successfully served on probation, the defendant made no argument relative to street time and presented no evidence as to the amount of time the defendant successfully completed. Because the defendant offered no evidence on the record as to the amount of time successfully spent on probation nor made any argument for its conferral, we cannot conclude that the trial court abused its discretion. *See State v. Carter*, No. M2023-00187-CCA-R3-CD, 2024 WL 4002781, *5 (Tenn. Crim. App. Aug. 30, 2024). The defendant is, therefore, not entitled to relief.

In his reply brief to this Court, the defendant responds to the State's waiver argument by asking this Court to review the issue for plain error. However, the defendant did not analyze any of the factors that could justify plain error review. No "particularly compelling or egregious circumstances" exists to justify our sua sponte consideration of plain error relief. *See State v. Thompson*, No. W2022-1535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*; *State v. Powell*, No. W2011-002685-CCA-R3-CD, 2013 WL 12185202, at *8 (Tenn. Crim. App. Apr. 26, 2013), *perm. app. denied* (Tenn. Sept. 11, 2013). Accordingly, we respectfully decline to consider plain error relief on our own.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the revocation and disposition of the defendant's probation.

_____
J. ROSS DYER, JUDGE

- 7 -