IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 28, 2018

**STATE OF TENNESSEE v. ERIC HENRY**

**Appeal from the Circuit Court for Blount County**
**No. C-25425     Tammy Harrington, Judge**

_____

**No. E2018-00537-CCA-R3-CD**

_____

The defendant, Eric Henry, appeals the Blount County Circuit Court's order revoking his probation and ordering him to serve the balance of his two-year sentence for reckless endangerment in confinement.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ROBERT W. WEDEMEYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Shawn Graham, Assistant District Public Defender (at hearing), for the defendant, Eric Henry.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Mike Flynn, District Attorney General; and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 16, 2017, the defendant pleaded guilty to one count of reckless endangerment.  The trial court imposed a two-year sentence, suspended to probation.  On January 4, 2018, a probation violation warrant issued, alleging that the defendant had violated the terms of his probation by moving to a different county without the permission of his probation officer and by failing to report as instructed.

At the March 5, 2018 revocation hearing, Blount County Probation Officer Ashley Watson testified that she was assigned to supervise the defendant's term of probation.  She testified that the defendant "failed to report multiple times," including October 20, 2017, December 5, 2017, and December 12, 2017.  On October 20, 2017, the defendant called Ms. Watson "well after" intake began at "probably 9:30 or 10:00" and

told her that "he couldn't wake up due to some type of medication that he takes." He first reported to probation on October 27, 2017, at 8:00 a.m. As part of the requirements of his probation, the defendant was to undergo a mental health assessment. While meeting with Ms. Watson on October 27, the defendant informed her that he had an appointment scheduled for a mental health assessment on November 3, 2017, at Helen Ross McNabb. Ms. Watson testified that the defendant never provided her with proof that he attended the scheduled appointment or completed the mental health assessment.

Sometime in November, Ms. Watson "got a call that [the defendant] had checked himself into Buffalo Valley Treatment Center" ("Buffalo Valley") with a "tentative discharge date [of] December the 7th." Later, a counselor at Buffalo Valley informed Ms. Watson that "they went ahead and released [the defendant] because there was nothing that they could do for him." Ms. Watson was unaware of any drug addiction issue with the defendant and was not aware of Buffalo Valley's providing any mental health services, only drug treatment. Ms. Watson stated that she had cancelled the defendant's scheduled reporting dates while he was at Buffalo Valley, but the defendant later called Ms. Watson and informed her that he was "in Cookeville, living in a mission." Ms. Watson confirmed that Cookeville is in Putnam County. Ms. Watson testified that the defendant never discussed moving to Cookeville with her, and he moved without reporting to probation in Blount County. Ms. Watson advised the defendant to report to Blount County probation on December 5, but the defendant told her that "he was having car trouble" and could not report. On December 4, the defendant called Ms. Watson and told her that he could not report the following day "because he was going to check himself into treatment again." Ms. Watson informed the defendant that he would need to provide documentation for his treatment. The defendant faxed her proof of an emergency room visit from December 5, 2017. Ms. Watson advised the defendant to report to Blount County probation on December 12, but he did not report on that date. Ms. Watson testified that she "heard from [the defendant] almost every day."

Ms. Watson testified that the defendant was "very belligerent and argumentative" when discussing the terms of his probation. He called Ms. Watson and her supervisor "racist devils" and "prejudiced." When Ms. Watson instructed the defendant to report to Blount County probation on December 12, he replied that Ms. Watson "would have had a gang member waiting on the roof to take him out and he was scared to report." Ms. Watson had not been provided any proof that the defendant had complied with his probation requirement of obtaining a mental health assessment.

On cross-examination, Ms. Watson testified that at the defendant's October 27 intake appointment, she met with the defendant after his meeting with the intake officer. A few days after that meeting, the defendant called and informed Ms. Watson

-2-

that he was at Buffalo Valley. A counselor at Buffalo Valley also called Ms. Watson to confirm that the defendant was there and called again to inform her that the defendant had left Buffalo Valley because "they couldn't provide . . . enough care to get [the defendant] to the tentative discharge date." The defendant contacted Ms. Watson on November 29 informing her that he was living at a mission in Cookeville. During that phone call, Ms. Watson instructed the defendant to report to probation on December 5, but the defendant replied that he would not be able to arrange transportation by that date. Ms. Watson told the defendant that he must report on December 5, "that he did not have permission to go to Cookeville in the first place, and that he needed to find a way to Blount County if his car wasn't working." Ms. Watson never received any document from the mission verifying that the defendant was living there, but some faxes that the defendant sent to her originated from the mission's fax number.

Ms. Watson reiterated that the defendant called her on December 4 and told her that he could not report the following day. Ms. Watson informed the defendant that he must report on December 5 unless he provided "documentation proving that he was in a treatment center." The defendant did not report on December 5. The defendant contacted her on December 6, at which time he informed her that he had gone to the hospital on December 5. He faxed her documentation from his emergency room visit that same day. During the December 6 telephone call, Ms. Watson instructed the defendant to report on December 12. The defendant contacted Ms. Watson on December 11 and told her that he was having problems with his car and did not have transportation to Blount County. Ms. Watson's supervisor was also on that phone call, and the conversation was "more heated" than prior conversations. Ms. Watson instructed the defendant that he must report on December 12. The defendant again failed to report, and Ms. Watson filed a Probation Violation Report.

Ms. Watson testified that she received a telephone call from a housing program to which the defendant had applied to confirm whether the defendant was in compliance with the terms of his probation. Ms. Watson informed them that he had violated his probation. Afterwards, the defendant called Ms. Watson and scheduled a time on January 4 to meet her at the Blount County probation office "in order to get the transfer to Cookeville." The defendant reported as scheduled on January 4. Ms. Watson recalled that the defendant received disability payments monthly. She testified that the defendant faxed her documentation regarding mechanical problems with his vehicle after he failed to report on December 12.

The defendant testified that he was released from custody on October 16, 2017, and he was scheduled to report to probation for initial intake. The defendant admitted that he failed to report that day because he "didn't hear [his] alarm go off that

Friday due to [his] medication." He contacted Ms. Watson and apologized for missing the appointment. He reported the following week for his intake appointment. The defendant stated that he was not asked about his income, whether he had a mental health condition, or whether he had a substance abuse issue during his intake meeting. The meeting lasted "about an hour." The defendant testified that his drug test revealed "benzos" in his system, but he provided Ms. Watson with his medical report from Helen Ross McNabb showing that he was prescribed Seroquel, which could "give a negative test for benzos." The defendant stated that when he called Ms. Watson after missing his first intake appointment on October 20, he explained to her that he "couldn't wake up because . . . [his] medicine was so sedating, [but] she was like that's no excuse" and had "no sympathy and no concern about [his] mental capacity and mental health at all."

The defendant testified that Ms. Watson told him to keep her informed of where he was living, but at the time he was living in hotels. The defendant stated that he "went to CSU because [he] . . . had negative thoughts of paranoia because [he] . . . suffer[ed] from paranoid schizophrenia and chronic anxiety." He was there for six days. He said that he then obtained Ms. Watson's permission to go to Buffalo Valley. The defendant testified that he asked Ms. Watson at his intake meeting whether it was possible for him to transfer to Cookeville, and "[s]he said yes it could be done." The defendant explained that he "knew [he] had to go to Buffalo Valley" when he met with Ms. Watson on October 27. He remained at Buffalo Valley for two or three weeks, and when he left Buffalo Valley, he relocated to Cookeville because he "told [his] probation officer about that and she said that could be done." The defendant acknowledged that he had not received permission or an official transfer from probation, but he stated that after his counselor at Buffalo Valley contacted Ms. Watson, he "didn't hear nobody say, no, you can't go."

The defendant testified that he remained in contact with Ms. Watson by telephone. He stated that when Ms. Watson told him that he had to report to Blount County probation on certain dates, "[i]t made [his] anxiety real high" because his vehicle had problems with its brakes. He went to the hospital on December 5 because of his anxiety. Ms. Watson told the defendant to report on December 12, but he had not been able to repair his vehicle because he was waiting on his disability payment. He asked Ms. Watson for more time and told her that he would report "sometime in January." The defendant acknowledged that he did not report on December 12, but he remained in contact with Ms. Watson by telephone and fax. He was able to get his vehicle repaired shortly after January 1. After repairing his vehicle, the defendant reported to Blount County and was taken into custody. The defendant testified that he had secured a place to live at a "Christian-based program," had a working vehicle, and had "money on [his] credit card." He also had made arrangements for mental health counseling at Plateau

Mental Health in Putnam County. He said that if he was released from custody, he would like to have his probation transferred to Putnam County.

During cross-examination, the defendant testified that he had a prior conviction for robbery and that this present conviction arose out of his pleading guilty to stabbing someone with a knife. He also had a federal conviction for "a weapons charge." The defendant testified that he underwent a competency evaluation in his federal case and was deemed competent. The defendant acknowledged that he failed to report on October 20, December 5, and December 12 and that Ms. Watson never gave him permission to move to Putnam County.

On redirect, the defendant testified that he appeared for intake on October 27, and, although he did not appear on December 5 and 12, he remained in contact with probation by telephone.

The defendant asked that the court grant him "a split confinement of 90 days." The State argued that "alternative sentencing [wa]s inappropriate" because the defendant had "shown himself unable to be supervised and to be argumentative and disagreeable, thereby hindering probation's ability to supervise him."

The trial court found that the defendant "did not have permission to move to Cookeville, Tennessee" and that he "failed to report to probation as instructed" for initial intake. The court noted the defendant's explanation that his medication caused him to oversleep but stated that "he would have known that before he was scheduled to go for his intake if it's a medication that he takes on a regular basis. That's a phone call to probation." The court did not "give . . . much weight one way or the other" to the defendant's missing his December 5 report date because he told his probation supervisor that "he was going into treatment," but then he went to the emergency room. The court found that the defendant failed to report for probation again on December 12 and that by the time he reported on January 4, the violation warrant had already been issued. The court also found that the defendant's behavior displayed "a true sense of justification or entitlement to not follow the rules." The court revoked the defendant's probation and ordered him to serve the remainder of his sentence.

In this timely appeal, the defendant argues that because "he had permission to check into Buffalo Valley, he may have reasonably believed he was not prohibited from finding a place to stay in Cookeville." The defendant also argues that the defendant's missed reporting dates "may have been partially due to circumstances beyond his control." The defendant contends that the trial court abused its discretion by revoking his probation because he remained in contact with his probation supervisor and

demonstrated a willingness to obtain mental health treatment. The State disagrees, arguing that the defendant admitted to violating the terms of his probation.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

In the present case, the record supports the trial court's finding that the defendant violated the terms of his probation. The defendant admitted that he moved to another county without the permission of his probation supervisor. He also admitted that he did not report as scheduled on at least three occasions. These admissions are sufficient to establish the defendant's probation violations by a preponderance of the evidence. Furthermore, the law is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-