IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs August 21, 2019

## STATE OF TENNESSEE v. RANDY EARL EDWARDS

**Appeal from the Criminal Court for Davidson County
No. 2009-C-2209    Angelita Blackshear Dalton, Judge**

_____

### No. M2018-02247-CCA-R3-CD

_____

The defendant, Randy Earl Edwards, appeals the Davidson County Criminal Court's order revoking his probation and ordering him to serve the balance of his 10-year sentence for the sale of less than .5 grams of cocaine in confinement. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Emma Rae Tennent (on appeal) and Patrick Hakes (at hearing), Assistant District Public Defenders, for the appellant, Randy Earl Edwards.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Davidson County Grand Jury charged the defendant with one count of selling less than .5 grams of cocaine within 1000 feet of a drug-free school zone. The defendant, a Range I offender, entered into a negotiated plea agreement in which he pleaded guilty to the reduced charge of selling less than .5 grams of cocaine in exchange for a Range II sentence of 10 years suspended to supervised probation.[1]

---

[1]     The defendant's agreed sentencing scheme was pursuant to *Hicks v. State,* in which our supreme court held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997).

On October 13, 2011, the defendant conceded that he had violated the terms of his probation, and the trial court sentenced him to time served and returned him to probation with the added provision that the defendant complete an outpatient drug treatment program. On July 26, 2012, the trial court again found the defendant in violation of the terms of his probation and ordered split confinement of one-year's assignment to "RDAP" followed by a return to supervised probation. Again, on February 20, 2015, the defendant conceded that he had violated the terms of his probation, and the trial court sentenced him to time served and returned him to probation, ordering him to continue treatment at the Mental Health Cooperative. On April 8, 2016, the defendant once again conceded that he had violated the terms of his probation, and the trial court ordered him to serve 66 days followed by a return to probation with the added provision that the defendant complete a batterer's intervention program. On April 20, 2018, the defendant conceded yet another violation of the terms of his probation, and the trial court returned him to probation with the added provision that the defendant be released only to E and C Housing to complete an outpatient program.

On June 8, 2018, a probation violation warrant issued, alleging that the defendant again violated the terms of his probation by getting "kicked out of halfway house for missing curfew, leaving facility and not returning, and working while failing to pay for housing." An amended warrant issued on June 20, 2018, alleging that the defendant violated the terms of his probation by garnering new arrests and failing drug screens. The State elected to proceed only on the June 8 warrant, noting that the charges giving rise to the amended warrant had been dismissed.

At the December 6, 2018 revocation hearing, Teranesha Coleman, the defendant's probation supervisor, testified that she was notified that the defendant had been kicked out of E and C Housing "for not paying his required payments even though he was working" and for "fail[ing] to return back. He left and never came back." Ms. Coleman acknowledged that the defendant "tried to come back the following day."

The defendant testified that he had been detained for six months preceding the hearing and that the detention had been "very challenging . . . mentally and physically" but that he had participated in some programs during that time including a creative writing program. The defendant stated that he was asked to leave E and C Housing because he was unable to pay the full rent. Although he attempted to arrange for a payment plan, they "didn't agree to work anything out." He vacated the facility when he was ordered to leave. He acknowledged his prior probation violations but stated that his "goal[] now is to make positive change that will impact my family and I." He expressed plans to go through transitional housing and drug treatment, noting that he had been admitted to the Samaritan Recovery Center ("Samaritan") halfway house. After

-2-

completing drug treatment with Samaritan, he planned to move into Samaritan's after-care housing.

The defendant stated that he was employed when he was ordered to leave E and C Housing, but his hours had been cut from 30 hours per week to only 10 hours per week. He explained that the rent at E and C Housing was $600 to $700 per month, and he was not able to pay the rent after his work hours were reduced. He found additional employment approximately one week after being asked to leave E and C Housing. The defendant also said he had been accepted to Project Return, a program that helped inmates find employment upon release from prison.

Darrell Bradley, a client advocate with the Public Defender's Office, testified that he had been involved with the defendant's case for seven to eight months and had helped the defendant gain admittance to E and C Housing. He said that the defendant had been kicked out of the program for failing to pay rent. Mr. Bradley described the defendant as "a self-advocate," "very resourceful," and "a good man of character." He recalled the defendant's reporting to him that he suffered from "PTSD" and anxiety.

During cross-examination, Mr. Bradley acknowledged that the defendant was kicked out of E and C Housing for missing curfew in addition to failing to pay rent.

The trial court noted that "incarcerating someone because they cannot afford to pay for the halfway house would be unfair," but the court found that the defendant was asked to leave E and C Housing "because he didn't follow the rules, not necessarily the nonpayment of the rent, but there were other rules that he violated." The court found the defendant in violation of the terms of his probation and ordered him to serve the balance of his sentence in confinement.

In this timely appeal, the defendant argues that the trial court erred by revoking his probation and ordering him to execute his sentence. The State contends that the trial court did not err.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for

revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

In the present case, the record supports the trial court's finding that the defendant violated the terms of his probation. Ms. Coleman testified that she had discovered that the defendant was kicked out of E and C Housing for leaving without returning and for not paying his rent. Mr. Bradley acknowledged that he had discovered that the defendant was kicked out of E and C Housing for missing curfew and for failing to pay rent. Although the evidence in the present case is not overwhelming, this evidence was sufficient to establish the defendant's probation violations by a preponderance of the evidence. Furthermore, the law is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE