IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 17, 2019

## STATE OF TENNESSEE v. WILLIE LEE BALLARD

**Appeal from the Criminal Court for Hamilton County**
**Nos. 277642, 295285, 297519     Tom Greenholtz, Judge**

_____

### No. E2019-00452-CCA-R3-CD

_____

The defendant, Willie Lee Ballard, appeals the revocation of the probationary sentences imposed for his convictions of rape and violating the sex offender registration requirements. Because we discern no error in the ruling of the trial court, we affirm the order of revocation. Because, however, we discern clerical error in the judgment form for case number 277642, the case is remanded for the entry of a corrected judgment.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Steve E. Smith, District Public Defender; and Kevin L. Loper, Assistant District Public Defender, for the appellant, Willie Lee Ballard.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Neal Pinkston, District Attorney General; and Jason Demastus and Tom Landis, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

In March 2011, the defendant, originally charged with aggravated rape, pleaded guilty in case number 277642 to the lesser included offense of rape in exchange for a sentence of eight years to be served on probation. The plea agreement also provided that the defendant would be required to register as a sex offender. In December 2011, a probation violation warrant issued, and the trial court revoked the defendant's probation in April 2012. Upon that revocation, the court ordered the defendant to serve 11 months and 29 days in confinement before being returned to "enhanced probation" for the remainder of the sentence. A second probation violation warrant issued in April 2013, and the trial court again revoked the defendant's probation and ordered that he serve 11

months and 29 days in confinement before being returned to probation. A third probation violation warrant issued in April 2014, and the trial court again revoked the defendant's probation and ordered that the defendant serve an 11-month-and-29-day period of incarceration before being returned to probation. A fourth probation violation warrant issued in January 2015.

In May 2015, the defendant was charged in case number 295285 with violating the requirements of the sex offender registry. In July 2015, pursuant to a plea agreement with the State, the defendant pleaded guilty to the charge in that case in exchange for a sentence of 11 months and 29 days followed by two years' "sex offender probation" to be served consecutively to the sentence imposed in case number 277642. Pursuant to the same agreement, the defendant admitted to the allegations in the January 2015 probation violation warrant in case number 277642 and was reinstated to probation after the trial court revoked his probation in that case.

In December 2015, a probation violation warrant issued, alleging that the defendant had violated the terms of his probation in cases 277642 and 295285 by failing to report and by failing to comply with the requirements of the sex offender registry. In February 2016, the defendant was again charged with violating the requirements of the sex offender registry in case number 297519. In September 2016, the defendant entered into a plea agreement that covered the probation violation warrant in cases 277642 and 295285 and the single charge in case number 297519. The agreement provided that the defendant's probation would be revoked in case number 277642 and that he would be required to serve 11 months and 29 days in confinement before returning to probation. The agreement provided that his probation would be revoked in case number 295285 and that he would be required to serve 11 months and 29 days in confinement consecutively to the period of incarceration imposed in case number 277642 before being returned to probation. The agreement provided for a sentence of two years in case number 297519 to be served as 180 days' incarceration followed by probation.

On May 30, 2018, a probation violation warrant issued alleging that the defendant had violated the terms of his probation in case numbers 277642, 295285, and 297519 by possessing marijuana, failing two drug screens, failing to report, failing to charge his global positioning locater, and consuming alcohol.

At the October 4, 2018 revocation hearing, Aio Efiom testified that he supervised the probation for approximately one year. Mr. Efiom recalled that the defendant initially had no difficulty complying with the terms of his probation but that, following what the defendant termed a "mild stroke," Mr. Efiom began to notice that the defendant "was just having difficulty keeping his appointments and things of that nature." Mr. Efiom said that the defendant, who was homeless when Mr. Efiom began supervising

-2-

his probation, moved into a group home at some point. On April 11, 2018, Mr. Efiom and two other probation officers searched the defendant's residence as part of "one of two searches" that their office performed "with all our sex offenders." During that search, Mr. Efiom discovered "a very small quantity" of marijuana underneath the defendant's pillow. He contacted the Chattanooga Police Department, which dispatched officers who eventually "issued a citation in lieu of arrest for the possession of marijuana."

Because he had discovered marijuana in the defendant's possession, Mr. Efiom asked the defendant to submit to a drug test. A drug screen performed on April 19, 2018, indicated that the defendant had used marijuana. A second drug screen performed on May 21, 2018, similarly indicated the presence of marijuana. The defendant admitted to Mr. Efiom that he had used marijuana.

In addition to his use and possession of marijuana, the defendant failed to properly charge the GPS locater used to track his movements. Mr. Efiom said that when the defendant failed to charge his locater, Mr. Efiom visited "his last track point" and discovered the defendant at the home of his niece, which was located in a public housing project from which the defendant was banned due to his status as a sexual offender. When Mr. Efiom spoke to the defendant, he "smelled a strong smell of intoxicants" and observed that the defendant "seemed very unsteady on his feet." Additionally, Mr. Efiom observed "beer located on the coffee table that was directly in front of where [the defendant] was sleeping on the couch."

Samantha Bayles, a "sentencing advocate" employed by the public defender's office, testified that she had worked with the defendant since his original 2011 guilty plea to rape. At that time, the defendant "was extremely confused" and appeared unable to understand the rules of his probationary sentence and to comprehend the additional requirements associated with the sex offender registry. She said that she had "serious concerns" about the defendant's ability to successfully complete a sentence involving release into the community given the difficulties with his mental and physical health. She said, however, that prior to the most recent violation, the 70-year-old defendant had succeeded within the community for 419 days, which she described as "double his average."

Ms. Bayles testified, "Because he's a sex offender and as someone with some kind of a mental condition who is on the sex offender registry it's incredibly difficult to navigate the system out there." To that end, Ms. Bayles had been "discussing mental health court possibilities or even a group home placement." She said that if the defendant's comprehension difficulties were "due to brain trauma from the strokes he might not qualify" for mental health court. She said that, at the time of the hearing, she was not yet aware whether the defendant had a mental health diagnosis that would qualify

him for mental health court. She testified that, if the defendant was unable to qualify for mental health court placement, she hoped to get him into a group home for sexual offenders located in Eagleville, Tennessee.

At that point, the trial court continued the hearing until a determination could be made whether the defendant was eligible for mental health court placement. At the continued proceeding on March 6, 2019, defense counsel stated on the record that the defendant's mental health court application had been denied and that neither he nor Ms. Bayles had been able to come up with a suitable alternative placement for the defendant.

The trial court found by a preponderance of the evidence that the defendant had violated the terms of his probation by testing positive for the use of marijuana on two occasions, by consuming alcohol, and by failing to initially report for drug testing. The court also found that the defendant had violated the terms of his probation by failing to ensure that his GPS locater remained charged at all times, which, in turn, prevented the probation office from tracking him. The court observed that the defendant's probation had been revoked five times before and noted that the defendant's history of probation revocations was replete with "either GPS monitoring failure or a simple failure to report." The court also observed that lesser sanctions than ordering the sentence into service had been unsuccessful in the past. The court found that the defendant's use of marijuana and alcohol after having been on probation for so long evinced "a willful defiance of the orders of the court." The court also found that the defendant had "a very low amenability to further rehabilitation." Based upon these findings, the court ordered the defendant to serve the balance of his sentences in cases 277642, 295285, and 297519 in confinement.

In this timely appeal, the defendant concedes that he violated the terms of his probation but insists that the trial court erred by ordering that he serve the balance of his sentences in confinement. The State asserts that the trial court did not err.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

-4-

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

In the present case, the evidence adduced at the revocation hearing established by a preponderance of the evidence that the defendant violated the terms of his probation, and the defendant does not contend otherwise on appeal. Instead, the defendant argues that a sentence other than confinement would have been more appropriate under the circumstances here presented. The law is well-settled, however, that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation. Consequently, we affirm the order of the trial court.

Although we have affirmed the order of the trial court, we have observed clerical error in the judgment for the defendant's conviction of rape in case number 277642. That conviction carries a requirement of community supervision for life, *see* T.C.A. 39-13-524(a), but the judgment form included in the record on appeal does not reflect that the defendant is subject to community supervision for life. The judgment must reflect the lifetime community supervision requirement. Because other documents in the record, as well as the testimony of Ms. Bayles, indicate that the defendant knew that he was subject to the lifetime supervision requirement, this is not a situation wherein the failure to include the community supervision requirement renders the judgment void. *See State v. Bronson*, 172 S.W.3d 600, 602 (Tenn. Crim. App. 2005). Instead, it is our view that the failure to "check the box" imposing community supervision for life can be classified as a clerical error. Thus, we remand the case for the entry of a corrected judgment in case number 277642 properly reflecting the lifetime community supervision requirement.

Accordingly, the judgment of the trial court revoking the defendant's probation is affirmed, but the case is remanded for the entry of a corrected judgment in case number 277642.

_____
JAMES CURWOOD WITT, JR., JUDGE