IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 29, 2020

## STATE OF TENNESSEE v. ANTHONY LEE SMITH

**Appeal from the Criminal Court for Hamilton County
Nos. 293256, 293680      Tom Greenholtz, Judge**

_____

### No. E2019-02085-CCA-R3-CD

_____

The defendant, Anthony Lee Smith, appeals the Hamilton County Criminal Court's order revoking his probation and ordering him to serve the 10-year sentence imposed for his theft conviction in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and D. KELLY THOMAS, JR., JJ., joined.

John G. McDougal, Chattanooga, Tennessee, for the appellant, Anthony Lee Smith.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Neal Pinkston, District Attorney General; and Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In July 2016, the defendant pleaded guilty to one count of theft of property valued at $1,000 or more but less than $10,000 in case number 293256 and one count of burglary of an automobile in case number 293680. The trial court imposed the negotiated sentences of 10 years of supervised probation for the theft conviction and six years of supervised probation for the burglary conviction and aligned the sentences consecutively. As a condition of probation, the defendant was ordered to complete Mental Health Court.

On May 22, 2017, a probation violation warrant issued, alleging that the defendant had violated the terms of his probation by garnering new charges. The defendant conceded the violation, and the trial court revoked his probation and returned him to supervised probation with the condition that he continue with the Mental Health Court. On May 7, 2018, a second probation violation warrant issued, alleging that the defendant had

violated the terms of his probation by violating the rules of the Mental Health Court, and on June 19, 2018, the trial court removed the defendant from the Mental Health Court. On August 27, 2018, a third probation violation warrant issued, alleging that the defendant had again garnered new charges and had failed to report those new charges to his probation officer. On November 7, 2018, the trial court dismissed the probation revocation and returned the defendant to supervised probation. On December 21, 2018, a fourth probation violation warrant issued, alleging that the defendant had absconded, and an addendum to the violation report alleged that the defendant had also garnered a new charge. On February 20, 2019, the trial court again dismissed the probation revocation and returned the defendant to supervised probation.

On April 3, 2019, yet another a probation violation warrant issued, alleging that the defendant had violated the terms of his probation by failing to report, failing to respond for home visits, and failing to provide his current address and contact information. The trial court held a revocation hearing in October 2019, which hearing is the subject of this appeal.

Leo Franklin Stewart, a probation manager and officer with the Mental Health Court, testified that he began supervising the defendant's case while the defendant was in custody on the December 2018 violation warrant. Following his release on February 20, 2019, the defendant failed to report as he had been instructed. On March 11, Mr. Stewart visited the defendant's home, but the defendant was not there. Mr. Stewart left his contact information and instructions for the defendant to report with the defendant's "significant other" at the residence. On March 13, Mr. Stewart returned to the defendant's home and again left his contact information and instructions for the defendant to report. On March 18, Mr. Stewart mailed the defendant a letter to the address in the defendant's record, instructing the defendant to report on March 22. That same day, Mr. Stewart "conducted a third home visit," but, again, the defendant was not home. The defendant also failed to report as instructed on March 22. Mr. Stewart filed a violation report on March 29 based on the defendant's failure to report. Mr. Stewart noted that the defendant's probation had twice been revoked before Mr. Stewart began supervising him, and at some point, the defendant was removed from Mental Health Court.

During cross-examination, Mr. Stewart stated that he did not receive any messages from the defendant on his office or cellular telephone after he left his contact information at the defendant's residence. During Mr. Stewart's March 13 visit to the defendant's house, the defendant's girlfriend told him that she had passed on Mr. Stewart's message to the defendant. During the March 18 visit, she told Mr. Stewart that the defendant "was off hanging with his friends" and that she "last saw him the day prior." On March 18, Mr. Stewart went to the defendant's house at 1:30 p.m. and again sometime later

that evening. Mr. Stewart acknowledged that the defendant had not incurred any new charges in this instance and that his violation was only for failing to report.

Upon questioning by the trial court, Mr. Stewart stated that the contact information he gave to the defendant's girlfriend included his cellular and office telephone numbers. He clarified that he could receive messages on his cellular telephone but that his office telephone was temporarily unable to receive voice messages. He stated that the receptionist at his office could take a message for him if he was out, but he acknowledged that his office telephone would not automatically transfer to the reception telephone. Mr. Stewart stated that, although he could not receive messages on his office telephone, he would regularly review the numbers on the call log when he returned to his office.

The defendant testified that he was at work each time that Mr. Stewart came by his house and that he called Mr. Stewart, leaving a message on his answering machine. He denied that he ever received a letter from Mr. Stewart. He acknowledged that he did not go to the probation office but stated that he had been working and was "trying to make my ends meet." He also stated that his prior probation officer would conduct his visits at the defendant's workplace, which allowed him to keep working. He acknowledged that he "made a mistake" and apologized for his failure but reiterated that he "just kept on working," trying to "make my money where I can" and "stay in the house that I'm living in." He stated that he was behind on rent and was trying to work enough to pay his bills. He maintained that he attempted to call Mr. Stewart at the telephone number provided on the contact card. The defendant stated that, if the court returned him to supervised probation, he would report as instructed.

During cross-examination, the defendant acknowledged that he had not been to the probation office since his case was assigned to Mr. Stewart. He asserted that he did not know that Mr. Stewart had been assigned as his probation supervisor despite Mr. Stewart's leaving his contact information for the defendant.

At the close of the hearing, the trial court took the matter under advisement. In its November 4, 2019 written order, the trial court found that the defendant violated the terms of his probation by failing to report to his probation officer. Upon revoking the defendant's probation, the trial court ordered the defendant to serve the balance of his 10-year sentence in case number 293256 in confinement and to serve the consecutive six-year sentence in case number 293680 on supervised probation.

In this timely appeal, the defendant argues that the trial court erred by revoking his probation and ordering him to execute his 10-year sentence. The State contends that the trial court did not err.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

Here, the record supports the trial court's revocation of the defendant's probation. Although the defendant contends that he failed to report to his probation supervisor because he was working, he acknowledged that he knew that he was required to report and that he failed to do so. Mr. Stewart testified that he made multiple and varied attempts to contact the defendant to no avail. This evidence is sufficient to establish the defendant's probation violation by a preponderance of the evidence. Furthermore, the law is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-