IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 29, 2021

## STATE OF TENNESSEE v. DAVID LEE RICHARDSON

**Appeal from the Criminal Court for Hamilton County**
**No. 301791     Tom Greenholtz, Judge**

---

### No. E2020-01223-CCA-R3-CD

---

The defendant, David Lee Richardson, appeals the revocation of the sentence of probation imposed for his convictions of false imprisonment and domestic aggravated assault, arguing that the trial court erred by ordering that he serve the balance of the total effective sentence in confinement. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Brennan M. Wingerter, Assistant Public Defender (on appeal)[1]; and Jay Perry, Assistant District Public Defender (at hearing), for the appellant, David Lee Richardson.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Neal Pinkston, District Attorney General; and Leslie Longshore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On March 21, 2018, the defendant, originally charged with aggravated kidnapping, domestic aggravated assault, and vandalism, pleaded guilty to one count of false imprisonment and one count of domestic aggravated assault in exchange for a sentence of three years' probation and dismissal of the vandalism charge. A probation violation warrant issued on February 28, 2020, which warrant alleged that the defendant had violated the terms of his probation by violating an order of protection, failing to report, and engaging in intimidating behavior. The probation violation report indicated that the

---

[1]     Assistant Public Defender Patrick S. Rader prepared the brief in this case. The court granted Mr. Rader's request to withdraw and Ms. Wingerter's request to substitute as counsel of record in June 2021.

defendant was sanctioned by the probation officer for failing a drug screen on March 26, 2018. He was sanctioned again following his arrest for disorderly conduct on July 4, 2019, and his period of supervision was increased by 60 days. After learning in January 2020 that a warrant had been issued for the defendant's arrest for violating an order of protection or restraining order, the defendant's probation officer contacted the defendant and urged him to turn himself in. The officer also reminded the defendant of his upcoming report date. The defendant did not report as scheduled on January 31, 2020, despite having assured his probation officer that he was aware of the appointment and intended to attend.

An addendum to the probation violation report filed on July 20, 2020, provided that warrants for the defendant's arrest had been issued on March 18 and April 29, 2020, for violating an order of protection on two separate occasions.

On August 28, 2020, the trial court conducted a probation violation hearing via video conference.[2] Christina Barnes of the Tennessee Department of Correction ("TDOC"), Probation and Parole testified that the "main basis for the violations" in the defendant's case are "new charges for violation of order of protection."

Emily Kriegel testified that she and the defendant "were in a relationship and we had a child together, and it did not end well." Ms. Kriegel said that she and her son moved out of the residence she shared with the defendant in September 2019 and obtained an order of protection against him in October 2019. When she arrived at work on December 15, 2019, Ms. Kriegel's boss showed her "some pictures of what was left on the front windows and the front door and the back door." The messages, containing birthday wishes, a profession of love, and an expression of the desire to "work this out," were signed "Daddy-O," Ms. Kriegel's nickname for the defendant.

On March 18, 2020, the defendant called Ms. Kriegel's place of business "twice asking for me and we saw him walk by at least twice." Then, on April 27, 2020, Ms. Kriegel's babysitter, Madison Segar, was driving Ms. Kriegel and her son home when they observed the defendant at a traffic light, traveling in the opposite direction. The defendant "did a U-turn and chased us for about eight or nine minutes while we were on the phone with 9-1-1." At one point, Ms. Kriegel and Ms. Segar were forced to stop at a traffic light, and the defendant pulled "behind us and hopped out of the car and started banging on the window." When he saw that Ms. Kriegel was on the telephone, "he got

---

[2] In response to the COVID-19 pandemic, the Tennessee Supreme Court suspended all in-person court proceedings on March 13, 2020. *See In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (Order). The court later modified "the suspension of in-person court proceedings, with appropriate safeguards," to include the continued and increased use of, among other things, video conferencing. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Apr. 24, 2020) (Order).

back in the car and drove off in the other direction." Ms. Kriegel said that she could not recall what the defendant yelled while banging on the window because she "was terrified."

Chattanooga Police Department Officer Sydney Hamon investigated the December 15, 2019 incident at Ms. Kriegel's place of employment. Officer Hamon viewed photographs of the messages, which consisted of birthday wishes and a profession of love and "were signed as Daddy-O."

Madison Segar testified that on April 27, 2020, she was driving Ms. Kriegel and her son home when they saw the defendant driving in the opposite direction. After passing Ms. Segar's vehicle, the defendant "made a U-turn and he was following us." She telephoned 9-1-1 "using the voice control" on her vehicle and "headed towards UTC police station because I assumed there may be someone there to help." Ms. Segar said that the defendant "kept trying to cut us off" and that when she pulled into the parking lot of the police station, which was empty, the defendant blocked her vehicle with his and got out and approached. Ms. Segar pulled out but quickly got stuck at a traffic light, "and he got out of his car and approached my car very angrily and started banging on my windows, screaming things that I couldn't understand." She told him to go away. Ms. Segar said the defendant "looked so angry" and like "nothing was going to stop him from getting what he wanted in that moment." Ms. Segar recalled that Ms. Kriegel had "a panic attack," crying and "unable to speak," until she "collapsed over" with "her head . . . in her lap." The defendant eventually walked away, and Ms. Segar returned to the UTC police station as instructed by the 9-1-1 dispatcher.

Hannah Rooker with Hamilton County Community Corrections testified that she supervised the defendant during his pretrial house arrest under the terms set by the trial court on June 12, 2020. Ms. Rooker said that she asked the court to revoke the defendant's bond on July 6, 2020, based upon his being "out of range of the arrest house" on July 4 and 5, 2020.

The defendant testified on a variety of issues, including his upbringing, his compliance with the technical requirements of his probationary sentence, and the reasons for his unauthorized absence from the arrest house. After asserting his 5th Amendment right to remain silent, he did not testify about the incidents that gave rise to the alleged violations because those criminal charges were pending at the time of the violation hearing.

In a thorough and well-reasoned order, the trial court considered the evidence presented at the hearing and determined that the defendant "violated the terms and conditions of his alternative sentence by engaging in new criminal conduct consisting of twice violating" an order of protection. The court found that the State had presented insufficient evidence that the defendant had violated the order of protection on a third

occasion. The trial court observed that the defendant's committing what "essentially amounts to the commission of an assault" while on probation for "assaultive conduct is especially serious" and "tends to show clearly that the beneficial aspects of probation are not occurring." The court also noted that it was "particularly concerned about the nature of the conduct in this case" given that the defendant, "in full possession of his faculties," chased and terrorized Ms. Kriegel. The trial court observed that the defendant's criminal history included two convictions for domestic assault involving two different victims. The court concluded that "[t]he presence of multiple domestic assault convictions combined with new assaultive conduct, now begins to look like a pattern of conduct and to see its repetition while the [d]efendant is on probation for aggravated domestic assault is concerning, if not alarming." The trial court found that, although the defendant had complied with the technical terms of his probation, he had failed to demonstrate an amenity to rehabilitation on the primary issue to be addressed during his probation, which the court deemed to be the defendant's "issues with domestic violence against his partners." The court said that the "willfulness of these repeated violations weighs heavily" and suggested that it was unlikely "that any conditions of a suspended sentence could be imposed with an expectation of compliance." Ultimately, the court determined that "the totality of the circumstances" indicated "that the beneficial aspects of probation are not being served" and that the defendant had "not kept his agreement with the State." The court ordered the original sentence into execution to be served in confinement.

In this timely appeal, the defendant challenges the trial court's order that he serve the balance of his sentences in confinement.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may

order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

In our view, the trial court did not err by revoking the defendant's probation and ordering the original sentence to be served in confinement. The evidence presented at the hearing fully supported the trial court's conclusion that the defendant had violated the terms of his probation, and it is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the alternatives available following the revocation of his probation.

Accordingly, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve the balance of his sentence in confinement.

_____
JAMES CURWOOD WITT, JR., JUDGE