IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2024 Session

## STATE OF TENNESSEE v. MISTY PAUL

**Appeal from the Circuit Court for Chester County**
**No. 07-441   Joseph T. Howell, Judge**

_____

**No. W2023-00830-CCA-R3-CD**

_____

The defendant, Misty Paul, appeals the order of the trial court revoking her probation and ordering her to serve her modified six-year sentence in confinement.  Upon our review of the record, the parties' briefs, and oral arguments, we affirm the revocation and disposition of the defendant's probation, but remand for the sole determination by the trial court as to whether to credit the defendant with time successfully spent in compliance with probation pursuant to Tennessee Code Annotated section 40-35-310(a).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Mitchell A. Raines, Assistant Public Defender, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal); Jeremy Epperson, District Public Defendant, Jackson, Tennessee (at revocation hearing), for the appellant, Misty Paul.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Chad Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On June 20, 2008, the defendant pled guilty to conspiracy to commit insurance fraud of more than $60,000, a Class C Felony.[1] The defendant was sentenced to five years' probation. The trial court suspended the defendant's sentence, placed her on judicial diversion, and ordered her to pay restitution to her victim, Allstate, in the amount of $90,000. The restitution was to be paid in amounts of at least $500 per month.

In April of 2011, a violation warrant was issued for the defendant. The accompanying report alleged the defendant had committed technical violations by failing to follow two conditions of her diversion: the requirement that she maintain full-time employment, or be a student, and the requirement to pay restitution in an amount of at least $500 per month.[2] The violation report noted that the defendant had reported regularly, had no new arrests, and her drug screens revealed only prescription medications. On June 21, 2011, the defendant admitted to the violation and waived her right to a hearing. The defendant agreed to be removed from diversion and receive a modified sentence of supervised probation for a six-year period to begin anew. The defendant was to continue making monthly restitution payments but at a reduced rate of $250 per month.

On February 6, 2015, the defendant's probation officer, Rose Pittman, issued a second probation violation report alleging the defendant had absconded from probation and, once again, failed to pay the required restitution. As to the allegation of absconsion, the violation report stated the defendant had changed her residence without notifying Officer Pittman, had left the county of her known residence without permission, and had not allowed her probation officer to conduct a home visit. Officer Pittman detailed in the report that the defendant had not reported since September 8, 2014, and that when Officer Pittman attempted a home visit, it was apparent the defendant had changed her residence. As a result, Officer Pittman concluded the defendant had absconded and recommended that her probation be "revoked to serve."

On May 18, 2023, over eight years after her last report date, the defendant was located and served with the warrant for her second violation of probation. The defendant denied the violations and requested a hearing which was held on May 30, 2023. During the hearing, the trial court bifurcated the proceeding, first addressing the issue of whether a violation occurred, and second, addressing the consequence of the violation.

During the initial phase of the hearing, the State presented the testimony of Officer Pittman. Officer Pittman testified that the defendant last reported on September 8, 2014. On that on that date, the defendant failed her required drug screen and "faked a seizure."

---

[1] The Chester County grand jury also indicted the defendant on a charge of arson. That count of the indictment was dismissed in accordance with the plea agreement.

[2] As of March 15, 2011, the defendant owed approximately $86,800.00 in restitution.

After this incident, the defendant did not report to Officer Pittman or pay restitution again. In an attempt to regain contact with the defendant, Officer Pittman went to the defendant's address to conduct a home visit. When she arrived, she found the home had an eviction notice on the door and that all furniture had been removed. Officer Pittman also noted there was no electricity connected to the home as the electric meter had been removed. Officer Pittman concluded from her observations that the defendant had absconded from probation, a non-technical violation, as well as failed to pay restitution, court costs, and fines.[3]

During the argument portion of the first phase of the hearing, the defense argued that the defendant's alleged actions had not met the definition of absconsion, stating that "all the officer had testified to was that [the defendant] had not reported to probation and they did not know where she was now living, not that she was intentionally removing herself from the probation process." After hearing the proof and reviewing the entire record, the trial court found that the defendant had failed to report, and accredited Officer Pittman's determination that the defendant had moved from her residence, and therefore, absconded. Therefore, the trial court found the defendant "violated the terms and conditions of her probation in a substantial way."

The trial court then turned to the second phase of the hearing: the disposition of the revocation. The defendant testified she had not been able to work due to ongoing health issues of lupus, epilepsy, and cancer. She testified she had filed for disability in February of 2023 because of injuries related to an "accident." The defendant further claimed that sometime after her last report date in 2014, she was told by a "Melissa Price" with the Tennessee Department of Correction that any debt owed to Allstate was now a civil matter "since so much time had passed" and that the defendant did not need to report to her probation supervisor again. The defendant admitted she had not reported to Officer Pittman after September 2014. The defendant also admitted that she moved from her last known address in McNairy County to Madison County, claiming she was given permission by Melissa Price. When asked if she had received any paperwork from Melissa Price releasing her from probation, the defendant claimed she could not answer the question.

During the argument portion of the disposition phase of the hearing, the defense asked the trial court to credit the defendant with time she successfully complied with her diversion and her probation. The State responded that the defendant, after her first violation, had been reinstated to probation to begin anew in 2011 with an additional year, and therefore, should not receive credit for time spent on diversion prior to the first revocation. The State also indicated to the trial court that "[t]here's no provision at that

---

[3] At the time of the hearing, the defendant owed $82,851.50.

time for street time to be awarded." The trial court agreed, stating, "I don't know that I even have the authority to award that."

At the conclusion of the hearing, the trial court considered the entire record, the defendant's prior violation, and the testimony of Officer Pittman concerning the amount of restitution still owed and her attempts to contact the defendant. The trial court also took note of the defendant's health issues but stated that no corroborating evidence of those issues was offered. Ultimately, the trial court concluded that the defendant was in "violation of the terms and conditions of her probation in a substantial way and is no longer a proper candidate for a suspended sentence, so she'll be revoked to serve." On June 6, 2023, the defendant filed a timely Notice of Appeal.

*Analysis*

On appeal, the defendant argues that the trial court erred by finding that the defendant had violated the terms and conditions of her probation, by failing to make sufficient findings on the record regarding the decision to impose confinement as the consequence for the violation, and by failing to credit the defendant's sentence with the "street time" accumulated while on probation prior to the violation. The State contends the trial court acted within its discretion in revoking the defendant's probation and ordering her to serve her sentence in confinement. The State, however, agrees with the defendant that the trial court did possess the authority to award credit for "street time" for time successfully spent in compliance with probation. After review, we affirm the judgment of the trial court as to the revocation of the defendant's probation and the imposition of confinement as disposition. However, we conclude the trial court erred by failing to determine whether to award the defendant credit for the period of time she was successfully in compliance. We, therefore, remand the case for the trial court to exercise its authority to determine whether to award "street time" to the defendant, and if so, how much time the defendant should be credited.

## I. Trial Court's Determination of Revocation and Disposition

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his probation must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753.

- 4 -

a. **Trial Court's Decision to Revoke the Defendant's Probation Was Not an Abuse of Discretion.**

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. §§ 40-35-310, -311; *see State v. Turner*, No. M2012-02405-CCA-R3-CD, 2013 WL 5436718, at *2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in full. Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995).

To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554-55 (Tenn. 2001). In revocation cases, the trial court abuses its discretion when the "record contains no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* at 554 (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. 2022).

In the case at bar, the State presented the testimony of Officer Pittman that established that the defendant not only failed to report, but changed her residence without notification to her probation supervisor. Officer Pittman also testified that the defendant had failed to pay her restitution, fines, and court costs. In making the initial determination, the trial court stated that after reviewing the record and crediting the testimony of Officer Pittman, "I find that the defendant has violated the terms and conditions of her probation in a substantial way." The trial court found there was a satisfactory evidence showing that the defendant had violated the terms of her probation, and thus, revoked her probation. Upon review, the record contains sufficient evidence to support the trial court's decision. Therefore, in the first step of its discretionary analysis, we conclude the trial court did not abuse its discretion in revoking the defendant's probation. The defendant is not entitled to relief on this issue.

b. **Trial Court's Determination to Incarcerate the Defendant as the Consequence of Revocation Was Not an Abuse of Discretion.**

Having concluded that the trial court's determination to revoke the defendant's probation was not an abuse of discretion, this Court must separately review the trial court's determination of consequence imposed on the defendant. When a defendant's probation is revoked, the trial court has "discretionary authority to: '(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years.'" *State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *2 (Tenn. Crim. App. Dec. 26, 2018) (quoting *State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014)) (citations omitted).[4] "The determination of the proper consequences of the probation violation embodies a separate exercise of discretion." *Id.* (citing *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).

While it is "not necessary for the trial court's findings to be particularly lengthy or detailed, sufficient reasoning must exist to promote meaningful appellate review." *Dagnan*, 641 S.W.3d at 759 (*citing State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)). Moreover, this Court has repeatedly held that "an accused, already on [suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Walden*, 2022 WL 17730431 *4 (Tenn Crim. App. December 16, 2022) (quoting *State v. Brumfield,* No. M2015-01940- CCA-R3-CD, 2016 WL 4151178, at *8 (Tenn. Crim. App. Aug. 10, 2016)) (citations omitted).

At the conclusion of the second phase of the hearing, the trial court found that based on the entire record, the defendant's prior revocation and reinstatement of probation, and the testimony of Officer Pittman that the defendant "still owes over $80,000," the defendant was "no longer a proper candidate for a suspended sentence, so she'll be revoked to serve." Although the trial court's consideration of alternative options for the defendant is brief, the record reflects the trial court eliminated alternative consequences as being no longer appropriate for the defendant. This is sufficient to show the trial court made a separate discretionary decision to impose incarceration. The trial court stated the factors it considered before finding incarceration to be the most appropriate sentence for the defendant. We conclude the trial court's statements are sufficient for our review and that no abuse of discretion was made.

Nevertheless, the defendant claims that the trial court revoked the defendant's probation and ordered her to serve the remainder of her sentence "with no discussion of the propriety of the other options at the trial court's disposal." The defendant compares this case to that of *State v. Stewart*, where this Court remanded a probation revocation for

---

[4] Tennessee Code Annotated section 40-35-308(c)(1) statutorily limits trial courts to a maximum of one- year extension of probation.

the trial court to place further findings about the consequence imposed. *See State v. Stewart*, No. M2021-00595-CCA-R3-CD, 2022 WL 1236982, at *3 (Tenn. Crim App. Apr. 27, 2022). However, the defendant's analogy between *Stewart* and the case at bar is misplaced. In *Stewart*, the trial judge revoked a defendant's probation and sentenced the defendant to serve in a singular determination, in essence, conflating the two discretionary determinations. Here, however, the trial court conducted a separate analysis and made two distinct findings. Therefore, defendant is not entitled to relief.

## II.  Trial Court's Failure to Consider an Award of "Street Time" Was Error.

Pursuant to Tennessee Code Annotated section 40-35-310(a), once a trial court has determined to revoke probation and order incarceration as the consequence, it then has the discretion to "credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that time." *See State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023). The statute gives authority to the trial court to exercise its discretion to award or to deny credit for the time a defendant successfully serves on probation. *See id.* at 260 (quoting *State v. Smartt*, No. E2021-00125-CCA-R3-CD, 2021 WL 6143735, at *9 (Tenn. Crim. App. Dec. 30, 2021)).

In the instant case, the defendant and the State agree that the trial court erred by failing to make any determination as to whether the defendant should or should not receive credit for time successfully spent on probation prior to her second violation. Although the amendment became effective July 1, 2021, it applied to "court determinations made on or after that date." 2021 Tenn. Pub. Act ch. 409, §27. The defendant's second violation occurred several years prior to July 2021, but the trial court's determination did not occur until May 30, 2023. Therefore, the trial court had the authority under the statute to determine whether the defendant should receive credit for "street time," but failed to do so.

We conclude that due to the trial court's failure to make any determination on this issue on the record, we are unable to give meaningful review. Therefore, we remand to the trial court to make findings concerning whether the defendant should receive street credit for the time she successfully complied with probation, and if so, what amount to apply.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the revocation of the defendant's probation and the determination of imprisonment as disposition, but remand for the trial court to make findings determining the amount of "street time" to be applied to the defendant's sentence, if any.

_____
J. ROSS DYER, JUDGE